## HUNTER v. UNITED STATES.
### No. 6720.

Circuit Court of Appeals, Fifth Circuit.
Dec. 21, 1932.

J. Q. Mahaffey, of Texarkana, Tex., for appellant.

S. D. Bennett, U. S. Atty., of Beaumont, Tex., for the United States.

Before BRYAN, FOSTER, and HUTCH-ESON, Circuit Judges.

BRYAN, Circuit Judge.

The appellant, George Hunter, was convicted upon an indictment which in separate counts charged him with the unlawful transportation, without the permit required by law, and with the sale, on March 29, 1932, of intoxicating liquor, to wit, a half-gallon of whisky, for beverage purposes; in violation of the National Prohibition Act (27 USCA § 12).

For proof of its case the government relied on the testimony of Arthur Satterfield, a prohibition agent, and of one Virgil White, whom he had hired generally to buy whisky for the purpose of getting up evidence against the sellers, and had specially directed to buy whisky from Hunter. Aside from the circumstance of this special direction, there was no proof that either Satterfield or White had reason to believe or suspect that Hunter was engaged in making illegal sales of liq-. uor. White testified that on March 28, 1932, he first became acquainted with Hunter at the Grim Hotel, where he was introduced to him by Lee Davis; that thereupon he told Hunter that he, the witness, had the flu and would like to get a half-gallon of good whisky, and White replied in substance that he had come to the right man to get it. White did not say positively that he obtained whisky on the 28th, but did say that on the 29th, in response to his telephone call, Hunter delivered to him the half-gallon of whisky referred to in the indictment, for which he paid him $4, and that on this latter occasion he did not pretend that he wanted the whisky for any sick person. White was corroborated as to what he said over the telephone concerning delivery of the liquor and the price paid for it by Satterfield, who was present and arrested Hunter immediately after the liquor was delivered. Hunter admitted that on March 29th he transported and delivered the liquor and received $4 as the purchase price of it. As to the charge of sale, he claimed that he bought the liquor from a named person for $4 and therefore made no

profit out of it; that he had no whisky for sale, and acted as White's agent in making the purchase. As against both charges of the indictment he relied on entrapment as a defense; and to sustain that defense he testified on direct examination in substance, though not literally except where he is directly quoted, as follows: I have known Virgil White by sight for several years, but did not know his name until he was introduced to me on March 28th by Lee Davis. When White was introduced to me, I told him that I had been seeing him a long time but never knew him by name. "He asked me if I knew where he could obtain some good liquor, that his mother was at home sick in bed with the flu." I said to him that he had been around town long enough to know who had liquor, and he replied that he had been "buying from people but it wasn't the kind of stuff to be used for the purpose, and he was not able to buy prescription liquor." "I told him I thought I would be able to get it for him, and he suggested going with me. I told him I did not believe I could carry him to this party—I didn't believe I could get it that way." There was only one transaction. On the next day, the 29th, he called me up on the telephone. I told him "I had made the connection," and at his request I carried the liquor around to his house where I was arrested.

When the district attorney completed his cross-examination of Hunter, the district judge subjected him to a gruelling cross-examination, and inquired at length as to the nature of his business, and, when he replied that he was engaged in selling and repairing motorcycles, inquired into the number of such sales and the extent of his repair work; asked what else he had been doing, and where he got the money to live on; demanded that he show his hands, and state whether he had any calloused places on them caused by repair work; inquired repeatedly as to the amount he had on deposit in the bank; as to where he spent his time, and if he did not spend most of it at the Grim Hotel where Lee Davis introduced White to him. Lee Davis testified, corroborating Hunter as to his introduction to White, and as to what White said about his mother being sick. He denied that he was Hunter's pal, but admitted that they had been well acquainted with each other for a long time. After the district attorney had finished his cross-examination of this witness, the district judge asked him also a number of questions, and inquired particularly as to the nature of Hunter's business, and upon being told it was the handling of

motorcycles, asked what his principal business was, and if this witness did not know that Hunter had been consistently engaged in the handling of whisky. Upon rebuttal the government proved that Hunter during the year 1931 had made bank deposits which totalled some $4,700. The district judge, when he came to charge the jury, gave an instruction on the subject of entrapment, which was not excepted to; but in the course of his charge he commented at length on the credibility of appellant, although he failed to say anything about the credibility of White, upon whose testimony the government relied for conviction. In commenting upon Hunter's credibility he called particular attention to the evidence which he had brought out on cross-examination relating to the nature of Hunter's business, the small income derived therefrom, and Hunter's refusal or failure to explain any other source of income, or his total bank deposits for 1931, which he erroneously stated amounted to $6,000. He concluded his charge by asking the jury to render their verdict in the light of the credible testimony. Error is assigned upon the questions which the district judge asked appellant, his manner of asking them, and upon those portions of his charge to the jury to which reference has just been made.

██ It is a close question whether, taking appellant's testimony in its most favorable light, the defense of entrapment was made out. In cases where the intention to violate the law originates in the mind of the defendant, and the government agents or representatives do no more than merely to afford him an opportunity to commit a crime, in order to make out a case which can be successfully prosecuted, there is no entrapment. The government agents may even go so far as to aid in the commission of the crime without affecting the right of prosecution. But it is well settled that if they urge, persuade, solicit, seduce, or cause another to commit a crime, their action in doing so is fatal to the prosecution. Butts v. United States (C. C. A.) 273 F. 35, 18 A. L. R. 143; United States v. Wray (D. C.) 8 F. (2d) 429; and see generally on this subject a note to the Butts Case in 18 A. L. R. 146 et seq. We are of opinion that in view of Hunter's testimony, to the effect that the government representative White pretended that his mother was sick; that he was unable to buy medicinal whisky for her, and such other liquor as he found was not good enough for medicine; and that appellant, acting in the capacity of White's agent or merely to accommodate and befriend him, procured and delivered the liq-

uor, the question of entrapment was one for the jury to decide. Hunter's testimony showed more than that White merely offered an opportunity to violate the law; it showed also that White made a humanitarian appeal to relieve the suffering or sickness of his mother. If appellant's story that he paid as much for the liquor as he received be true, the jury could reasonably have found that he had no other object than to assist White, who had been introduced to him by his friend Davis, in procuring liquor. If Hunter was only engaged in the cold-blooded business of making sales of liquor illegally, and was uninfluenced by the representation of illness, it is but reasonable to suppose that he would have charged a price that would have yielded him a profit out of the transaction. The only thing that makes us uphold the view that there might have been entrapment is White's alleged representation as to his mother's illness.

 The assignments of error based on the district judge's cross-examination of appellant are in our opinion well taken. While that method of cross-examination, if it had been conducted by the district attorney, might have been proper, a district judge ought never to assume the role of a prosecuting attorney and lend the weight of his great influence to the side of the government. It is the judge's duty to maintain an attitude of unswerving impartiality between the government and the accused, and he ought never in any questions he asks go beyond the point of seeing to it, in the interests of justice, that the case is fairly tried. We refer with entire approval to what Judge Shelby, speaking for this court long ago, said on this subject in Adler v. United States, 182 F. 464. The only conclusion that could reasonably be drawn from the questions objected to was that the judge did not believe appellant was telling the truth about the amount or source of his income, but was thoroughly convinced and was attempting to demonstrate that appellant was deriving a large income from the illegal transportation and sale of liquor. The judge's charge was not as objectionable as was his cross-examination of appellant, but it was erroneous in that it was one sided, and placed undue emphasis on the testimony of appellant which the judge himself had brought out by his questions. If the trial judge comments on the evidence, as he has a right to do, he should call attention to the evidence in favor of as well as that against the accused. O'Shaughnessy v. United States (C. C. A.) 17 F.(2d) 225. That the district judge did not intend to be unfair is beside the question. The case was tried in such a way that the jury, in considering as a whole the judge's questions and charge, might well have reached the conclusion that he was not impartial, but was insisting upon a conviction. It is vastly more important that the attitude of the trial judge should be impartial than that any particular defendant, however guilty he may be, should be convicted. It is too much to expect of human nature that a judge can actively and vigorously aid in the prosecution and at the same time appear to the layman on the jury to be impartial. Other assignments of error are either abandoned, or present questions which may not arise upon another trial, and so they need not be considered.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.