**STATE of Missouri, Respondent,**

v.

**Michael C. JOHNSON, Appellant.**

No. 54405.

Supreme Court of Missouri,
Division No. 2.

May 11, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Thomas V. Connelly, St. Louis, for appellant Michael C. Johnson; Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

BARRETT, Commissioner.

The appellant, Michael C. Johnson, has been found guilty of burglary in the second degree and stealing and since he had a prior felony record the court sentenced him to, allowing "jail time," eight years for the burglary and four years for stealing, the sentences to run concurrently. The charge, all in one count, was that on February 3, 1968, Johnson "did feloniously and burglariously, forcibly break and enter a certain store, shop and building occupying the fifth floor at 1000 Washington Avenue the property of Modern Jacket Company, Incorporated, a corporation, with the felonious and burglarious intent to steal, take and carry away certain goods, wares, merchandise or personal property then and there kept and deposited in the said building; and that Michael C. Johnson did then and there feloniously and burglariously steal, take and carry away thirty-five jackets of the total value of two hundred fifty dollars; the property of Modern Jacket Company, Incorporated, a corporation, with the intent to deprive the owner of the use thereof and convert same to his own use."

The information, omitting formal matters, is thus set out in full because of appellant's claim that motions for acquittal should have been sustained because the state failed to sustain its burden of proof, one, "to show a burglary was committed" and, two, failed to show the value of the "goods allegedly appropriated exceeded $50.00."

Modern Jacket Company occupied the entire fifth floor of the Merchandise Mart, 1000 Washington Avenue. Access to the fifth floor was by three elevators. There was a stairway from the first to the fifth floor but the fifth-floor stairway was "walled off" with a material described as "plasterboard." On Friday, February 2, 1968, two of Modern's employees secured the elevators and all entrances to the fifth floor and the wall at the stairway was intact. Between 4:30 and 5:00 o'clock on Saturday, February 3, 1968, a McDonnell aircraft employee parked his automobile on St. Charles Street. He had seen "two colored men standing on the sidewalk" at the Merchandise Mart and as he looked up Tenth Street "one of these men was boosting another one up the fire escape into this Merchandise Mart Building." He went to a nearby candy store and called the police. Almost immediately, around 4:50, the police arrived and Officer Meyer boosted Officer Harris up to the fire escape and an open second-floor window—the burglar-alarm wires had been cut at that floor. Officer Harris first heard a noise and when he got to the swinging doors on the second floor he "saw this subject (the defendant Johnson) with an armload of jackets. He dropped the jackets on the floor and began stuffing them into a white bag of some type." Harris opened the door and yelled "Police Officer. Hold it," but Johnson "dropped everything and opened this door and ran toward the steps." Officer Harris yelled "Stop or I'll shoot" but Johnson ran down the steps, Harris fired one shot over his head and when Johnson continued down the steps to the first floor the officer shot at him and hit his shoulder. In the white bag there were a number of jackets all from Modern Jacket Company's plant on the fifth floor. At the fifth floor the officers found a hole in the plasterboard at the stairway, the jagged hole measured about 11 inches wide and a little over 3 feet in height and appeared to have been "kicked in."

■ The appellant pointing to the open window at the second floor and to State v. Pigques, Mo., 310 S.W.2d 942, says that there is no evidence indicating whether the window was closed or "secured" and contends therefore that there

was no testimony to support a "breaking and entering of the building." In this connection he urges that the inner area, the fifth-floor stairwell, was not a "structure." The argument, rather ingenuous, overlooks the most pertinent fact in the Pigques case: "There was no evidence of any attempt to get through the inner door." The plain implication of the opinion is that had the intruder gotten through the "inner door" there would have been a completed burglary. But the basic fallacy in the appellant's whole argument is that the charge, proof and verdict here is of burglary in the second degree (RSMo 1959, § 560.070), not burglary in the first degree. RSMo 1959, § 560.040. Again it appears to be necessary to point out that "it is only in first degree burglary that the method of gaining entry by 'bursting or breaking' is important," State v. O'Brien, Mo., 249 S. W.2d 433, 434. And basic distinctions of theory aside, the charge and proof here by cogent and convincing circumstantial evidence supports the jury's verdict finding that it was Johnson who after entering the building at the second-floor window "bursted and broke" the plasterboard closing off the fifth floor and so the court appropriately overruled the motions for acquittal.

■ The appellant's second point that the state failed to show "the value of the goods allegedly appropriated exceeded $50.-00" likewise misconceives the nature of the charge and the procedure adopted. As stated, the charge was of burglary and stealing, all in one count and the verdict was "We * * * find the defendant guilty of Burglary Second Degree and Stealing as charged." All in accordance with the statute: "If any person in committing burglary shall also commit a crime of stealing, he may be prosecuted for both offenses in the same count, or in separate counts of the same indictment, and, on conviction of such burglary and stealing, shall be punished by imprisonment in the penitentiary, *in addition to the punishment herein prescribed for burglary, not less*

*than two nor exceeding five years."* RSMo 1959, § 560.110. Thus if the prosecution and conviction is under this section and there is a supported finding of the burglary and stealing the punishment for stealing is governed by this statute and not RSMo 1959, § 560.161 "(i)f the value of the property stolen is at least fifty dollars" in which the punishment ranges from two to ten years and even a fine and jail sentence. Over seventy years ago the court said, "It will thus be seen that when a person, in committing a burglary, also commits larceny, and is found guilty of both, that the minimum punishment for the larceny is two years' imprisonment in the penitentiary, *regardless of the value of the property stolen."* State v. Brinkley, 146 Mo. 37, 41, 47 S.W. 793, 794. And more recently the court observed "that although the testimony indicated that the used spoon-type tire tool was not worth more than a dollar or a dollar and a half, *the actual value is immaterial if the article was stolen in the commission of a burglary."* State v. Witt, Mo., 371 S.W.2d 215, 220; State v. Summers, Mo., 362 S.W.2d 537.

Connected with the essential merits of the cause is the claim that the court erred "in improperly interjecting itself into the case by pointing out to the prosecutor that he had not properly established the corporate structure" of Modern Jacket Company. This incident came about after the company comptroller had described the burglarized premises and identified the lost merchandise. At the bench and out of the hearing of the jury the court said, "This is very trivial and it's very technical but there ought to be some explicit testimony in this record concerning the ownership of these garments and the legal status of the Modern Jacket Company." There was immediate objection by defendant's counsel and a claim that the observation "shows partiality on the part of the court to the prejudice of this defendant." Whereupon it was established that Modern Jacket Company is a Missouri corporation and that the items in question were its "property."

**30**

■ Unquestionably a judge should "at all times maintain an impartial attitude in his conduct and demeanor and a status of neutrality." 88 C.J.S. Trial § 51, p. 137. This does not mean, however, that in no circumstance may a judge make an observation or even a suggestion as to some technical detail; "ordinarily it is not improper for him to make suggestions to parties or counsel as to procedure in the action * * * as by calling attention to omissions in the pleadings or defects in the evidence." 88 C.J.S. Trial § 49e, p. 132. The court's interjection and remarks here are indeed not comparable to Duncan v. Pinkston, Mo., 340 S.W.2d 753, and there was no abuse of discretion in the court's conduct and ruling. State v. Edwards, Mo., 353 S.W.2d 725.

■ The appellant's remaining point is that the court erred in failing "to permit the appellant to examine *in full* the police report of the incident and thereby effectively deprived appellant of his right to full and complete cross-examination. This matter arose on several occasions each time appellant's counsel asking to see the police report. In most instances the requests were made in circumstances in which the report had not been used in any manner—only referred to in cross-examination—and yet there should be a caveat against the state's playing games with these and similar documents, as the court warned by way of dictum in State v. Crayton, Mo., 354 S.W.2d 834, 838. Here the complaint is that appellant was not permitted to examine a particular report *"in full"* and so whatever particular incident counsel had in mind there was admittedly not a complete denial of the request. Appellant concedes upon this record that State v. Aubuchon, Mo., 381 S.W.2d 807 and State v. Smith, Mo., 431 S.W.2d 74, are in point against his contentions here. It is not necessary, however, to review those cases or their rationale, upon this record and in the circumstances of this case there is no manifest injustice, at best only minor discrepancies in cross-examination are relied on,

and as the court said in the justly leading case of State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42, 51: "The denial of the right of inspection therefore did not prejudice the appellant." And see State v. Aubuchon, 381 S.W.2d 1. c. 814, and State v. Smith, 431 S.W.2d 74, 82 and annotation 7 A.L.R.3d 8, 50, 57.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.