**STATE of Missouri, Respondent,**

v.

**Darrell T. WREN, Appellant.**

**No. 56681.**

Supreme Court of Missouri, Division No. 2.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Joseph R. Schlozman, Kansas City, for appellant.

MORGAN, Presiding Judge.

A jury found defendant guilty of a felony—stealing from a person—but could not agree on punishment. The trial court assessed a penalty of four years imprisonment. Sections 560.156(2) and 560.161(2), RSMo 1969 V.A.M.S. Defendant has appealed.

Since the appeal was filed prior to January 1, 1972, jurisdiction remains in this court by virtue of Article 5, Section 31(4), of the 1945 Constitution of Missouri, V.A. M.S.

In view of the conclusion we are compelled to reach, the facts may be stated summarily. On August 14, 1970, at about 10:00 p. m., a man and his wife were walking to their car after attending a football game between the Chiefs and the Colts. Someone grabbed the wife's purse and ran, and the husband started in pursuit of the thief. A police officer on duty in the area joined in the chase. While all were running through an alley, the husband fell just before the defendant attempted to leap over a fallen tree which blocked the alley. Simultaneously, the officer, after a warning, shot the defendant in the knee causing such injuries as to require surgery. The purse was found on the ground near the tree. By way of defense, testimony was offered that defendant had attended the

game with friends; that many people were in the area; that after the screams, indicating a crime had been committed, a lot of people were running; and, that defendant became frightened and started running toward his home. To buttress his explanation for his having run down the alley, defendant sought to establish that in the area involved it was customary to run to avoid a possible arrest when trouble started whether one was guilty or not. The obvious objective of such testimony was to convince the jury that another person—ahead of defendant in the race—was probably the thief. Needless to say, the jury did not accept the defendant's evidence, nor do we suggest that it should have. However, we are concerned as to whether or not the decision as made might have been unduly affected by the attitude reflected by the trial court toward the defense defendant sought to establish.

The first of such complaints is based on the following which transpired while defendant was cross-examining the police officer witness for the state, who was regularly stationed in the area, and who apprehended the defendant. Interrogation had pertained to the character of the area and the relationship of the officer to known potential troublemakers in and around the stadium.

"[Defense Counsel]: What do you ask them when you stop?

[The Court]: You will have to develop that it serves some useful purpose. I can't see any useful purpose in this line of inquiry.

[Defense Counsel]: Your Honor, it will become relevant, because the defendant was afraid.

[Prosecutor]: I object to the question on the grounds of immateriality, Your Honor.

[The Court]: I think the objection is well justified, but I will overrule you

and allow you to develop this *ad nauseum*. Go ahead and proceed. Ask your questions."

■ Defendant argues: "To allow one to proceed '*ad nauseum*' is certainly discourteous, and indicative of some animosity on the part of the court toward defense counsel or defense counsel's case and clearly is not a non-partisan attitude. While the remark was candid it certainly was not proper. It left defense counsel shocked and speechless, not knowing whether to continue or to demand with decorum some sort of apology from the court * * * The Court's conduct as demonstrated by the record violates the Canons of Judicial Ethics Rules 1.05, 1.10 and 1.15. It degrades defense counsel as a person, comments on the evidence being adduced and detracts from its worth in the eyes of the jury. Such conduct unduly prejudices the defendant's case * * *"

In response, the state cites State v. Barron, Mo., 465 S.W.2d 523 and State v. Thursby, Mo., 245 S.W.2d 859, and submits as controlling a comment in the latter case, l.c. 863, that: "The record does show that the trial judge was somewhat petulant, but the remark of the judge in no way indicated how he thought the case ought to be decided, nor did the remark tend to prevent the jury from performing their duties in an impartial manner. The mere criticism of counsel is not ordinarily considered a ground for reversal. . . . The reprimanding of counsel during the progress of a trial is largely within the discretion of a trial court." Such a general rule necessarily is acceptable as a standard to establish that one person, the judge, must be in charge of the courtroom to assure an orderly trial. However, an area is involved wherein precedent is of little value and each case must be resolved upon its own facts. The word "nausea" has a dictionary definition which includes "extreme disgust," "aversion," and "state of revulsion." Although the expression as used was couched somewhat as a Latin phrase, one

would have to strain to argue the full impact of the same was not obvious to an average lay juror. We need not concern ourselves with whether or not the general standard referred to allowed for such a comment to be directed toward the conduct of defense counsel, but we are concerned as to whether or not the comment could have conveyed to the jurors an impression that the evidence being offered was in the mind of the judge totally absurd. From the record as presented, the latter possibility is clearly present. The defense being offered was tenuous at best; but, if admissible at all, defendant was entitled to have it presented to the jury free of the stamp of disapproval placed there by the trial court. This was not an incident calling for severe action by the trial judge to maintain the dignity of the court, but one wherein an ordinary ruling on the state's objection would have settled the issue.

■ Defendant complains further that the trial judge prejudiced the defense by unnecessary cross-examination of defense witnesses and voluntary declarations of objections to questions propounded by defense counsel. Such instances included (1) "I have heard you ask that, and I have heard opposing counsel ask it, and I just don't want to hear it again"; (2) "Just a minute, Doctor. The Court can't let a question like that, whether objected to or not . . ."; and, (3) "I don't believe that I shall give you a brief on the subject. Every lawyer in this jurisdiction knows . . ." From all of which, defendant claims that the cumulative effect was to deny him a fair trial. The record shows defendant's trial objections to such comments have been properly preserved. Compare State v. Barron, supra.

We need not reach a conclusion that the verdict of the jury would have been different absent the circumstances noted. However, the possibility was present, and the trial court should have refrained from discouraging the same. Such reprimands or admonishments as may be called for to-

ward counsel should be handled in such a manner as not to prejudice defendant's case in the eyes of the jury. A full review of the record makes it apparent that an undue burden was placed on defendant and that he was denied a fair trial. State v. Jones, Mo., 197 S.W. 156, 158; State v. Castino, Mo., 264 S.W.2d 372, 375; State v. Sanders, Mo., 360 S.W.2d 722, 726; State v. Kimball, Iowa, 176 N.W.2d 864, 867.

The judgment is reversed and the cause is remanded.

All of the Judges concur.