**STATE of Missouri, Respondent,**

v.

**Dwane EMBRY, Appellant.**

**No. 36530.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

October 14, 1975.

Motion for Rehearing or Transfer
Denied Nov. 19, 1975.
Application to Transfer Denied
Jan. 12, 1976.

John C. Danforth, Atty. Gen., Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, for respondent.

Arthur Kreisman, Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for appellant.

CLEMENS, Presiding Judge.

The State charged defendant with, and a jury found him guilty of robbing Dennis Eckstein of five dollars by means of a knife (Section 560.135, RSMo). Defendant appeals from a judgment and sentence of 17 years' imprisonment.

In his motion for a new trial and his appellate brief defendant charges that during the testimony of a defense alibi witness he was denied a fair trial by the trial court "sustaining objections" that had not been made and *sua sponte* ordering the witness not to answer defense counsel's questions.

A summary of the evidence will suffice. Victim Dennis Eckstein and Marilyn Andrews were standing outside Busch Stadium watching a ball game through a wire gate. As they stood there defendant and his companion came up to Eckstein. Defendant held a knife at Eckstein's throat and demanded his money. Defendant's companion took Eckstein's wallet containing five dollars. Eckstein reported the robbery to police and from his description of the robbers the police soon apprehended defendant at a nearby restaurant. Police found neither money nor knife on defendant. Both Eckstein and Miss Andrews identified defendant as the robber who held the knife.

The defense presented three alibi witnesses who testified they and defendant had met at one of their homes, had later gone to a movie at an uptown theater and thereafter defendant and Lorenzo Raybon went to the restaurant where police later located defendant. Raybon testified defendant had no money so he and the others paid for defendant's ticket for the movie and for his meal at the restaurant. Defendant's three companions were cross examined on what the movie was about, and in rebuttal the State produced two witnesses who contradicted defense witnesses on the movie's content.

The critical issue on appeal arose during the direct examination of defense alibi witness Lorenzo Raybon. Defense counsel sought to learn from the witness whether at the theater defendant had money to pay for his own admission. The State's hearsay objections were sustained to each question. Then, the judge "sustained objections" to defense counsel's questions without the prosecutor having made any objections:

"Q. Did Embry, [the defendant] in your presence, ever offer to pay at the show?

"THE COURT: You're asking for hearsay. We're not going to permit that question. Objection will be sustained

. . .

"Q. After the money was paid, did you all go into the show?

"THE COURT: It's leading and suggestive. Objection will be sustained."

Defense counsel persisted, asking witness Raybon in similar questions whether defendant, to Raybon's knowledge, had money to buy his own ticket and who had in fact paid for it. To each question, the state objected "as to the form" of the questions, a lack of foundation and being self-serving. The court sustained each objection. Then: On two occasions, the trial judge *sua sponte* prevented the witness from answering defense counsel's questions:

"Q. Was anything said by him— Dwane Embry—

"THE COURT: We're not going to permit that question. It's hearsay . .

"Q. Who paid the money to the cashier?

"THE COURT: It's leading and suggestive, Mr. Kreisman. Proceed."

On no occasion did defense counsel either object to the court's comments or seek corrective action.

Defendant contends the judge's intervention on behalf of the prosecution influenced the jury and thereby denied him a fair trial. He relies on an opinion of *Starr v. United States,* 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894) holding: "It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." He also relies on *Herman v. United States,* 289 F.2d 362, 365 (5th Cir.), cert. den., 368 U.S. 897, 82 S.Ct. 174, 7

L.Ed.2d 93 (1961), holding: "A trial judge should never assume the role of prosecuting attorney and lend the weight of his great influence to the side of the government. *Hunter v. United States,* 5 Cir., 62 F.2d 217, 220 (1932). In our system of administering justice the functions of the trial judge and the prosecuting attorney are separate and distinct; they must not be confused. The trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution."

These rulings run parallel to Missouri law. In *State v. Castino,* 264 S.W.2d 372[3–5] (Mo.1954), the court declared: "The rule is well settled that a fair trial exacts absolute impartiality on the part of a judge as to both his conduct and his remarks. A judge must not say anything that can be construed by the jury to the prejudice of a defendant." He must "at all times maintain . . . a status of neutrality." *State v. Johnson,* 454 S.W.2d 27[4–6] (Mo. 1970). This is "a solemn obligation." *State v. Tate,* 468 S.W.2d 646[1–3] (Mo.1971).

The above principles were last applied in *State v. Wren,* 486 S.W.2d 447 (Mo.1972). There the court, *sua sponte,* interrupted defense counsel's cross examination of a state witness, declaring: ". . . I can't see any useful purpose in this line of inquiry." Then in response to the State's objection that the inquiry was immaterial, the court ruled: "I think the objection is well justified, but I will overrule you and allow you to develop this *ad nauseum.* . . ." Defendant complained of this and also incidents where the trial court stated "I have heard you ask that, and I have heard opposing counsel ask it, and I just don't want to hear it again"; and, "Just a minute, doctor. The Court can't let a question like that, whether objected to or not . . . ."

In reversing the conviction in *Wren* the court said "we are concerned as to whether or not the comment could have conveyed to the jurors an impression that the evidence being offered was in the mind of the judge

totally absurd. From the record as presented, the latter possibility is clearly present. The defense being offered was tenuous at best; but, if admissible at all, defendant was entitled to have it presented to the jury free of the stamp of disapproval placed there by the trial court. This was not an incident calling for severe action by the trial judge to maintain the dignity of the court, but one wherein an ordinary ruling on the state's objection would have settled the issue. . . . We need not reach a conclusion that the verdict of the jury would have been different absent the circumstances noted. However, the possibility was present, and the trial court should have refrained from discouraging the same. Such reprimands or admonishments as may be called for toward counsel should be handled in such a manner as not to prejudice defendant's case in the eyes of the jury. A full review of the record makes it apparent that an undue burden was placed on defendant and that he was denied a fair trial."

■ We believe the holding in *Wren* is appropriate here. In the four trial incidents related the witness testifying for defendant was attempting to support the defense—that defendant had no money and was at the movie and the restaurant during the robbery. The trial court "sustained two objections" the State had not made and twice *sua sponte* barred the witness from answering other questions. The trial court thereby appeared to abandon its vital status of neutrality and assumed the role of prosecutor; this placed an undue burden on defendant. From the court's attitude toward this defense witness there was a clear possibility, if not a probability, the jury would take the witness' testimony at less than face value. As said in *Wren, supra,* "the defense being offered was tenuous at best; but, if admissible at all, defendant was entitled to have it presented to the jury free of the stamp of disapproval placed there by the trial court."

*Wren* differs from our case in one material factor. There, the defendant's trial ob-

jections to the court's comments were properly preserved for review. (486 S.W.2d, l.c. 449). Here, defendant raised the point in his after-trial motion and his appellate brief, but at trial did not object to or seek corrective action because of the court's comments. Conceding that by defense counsel's silence at trial he failed to preserve the point for review (*State v. McCullough*, 411 S.W.2d 79[1] (Mo.1967), we now consider whether the point should be decided as plain error under Rule 27.20(c).[1]

■ Our supreme court has held the plain error rule does not cover all trial errors, but has declined to "delineate the precise bounds" for applying it. *State v. Mabery*, 437 S.W.2d 91, l.c. 93 (Mo.1969). It is to be applied on a case-by-case basis where substantial rights are affected and there is a strong, clear showing that injustice will result if the rule is not invoked. *State v. Meiers*, 412 S.W.2d 478[1] (Mo. 1967).

■ We revert to the high standard of fairness and impartiality that must be maintained by a trial judge. This includes the principle that a judge must say nothing *that can be construed* by a jury to a defendant's prejudice. (*State v. Casino, supra*). This "correctly states the rule for judicial guidance." *State v. Moore*, 303 S.W.2d 60[6] (Mo.1957).

Appellate courts diligently guard a defendant's right to trial by a manifestly impartial judge. In *State v. Dixon*, 463 S.W.2d 783 (Mo.1971) the trial court in ruling on a defense objection to prosecution argument made an ambiguous comment about the prosecuting attorney's duty to prosecute.[2] Defense counsel made no objection to the court's comment until he appealed. In speaking of the trial court's duty

the court quoted from *State v. Montgomery*, 363 Mo. 459, 251 S.W.2d 654[3] (1952): "Even if counsel or others should be guilty of misconduct the judicial calmness and the dignity and the self-restraint and obvious impartiality of the judge must always be maintained and made manifest. The judge must not indicate a belief in either the guilt or innocence of the accused. . . . We know that juries are inclined to draw conclusions and are quite sensitive to any indications of the judge's belief as to the merits of the issue being tried."

In holding the trial court's comment was reversible error under the plain error rule the *Dixon* court at 463 S.W.2d, l.c. 785, said: "However, we must also recognize that if the comments of the trial judge were 'of such a nature or would reasonably tend to prejudice the mind of the jury against the defendant and thereby deny him a fair and impartial trial' . . . the verdict cannot stand. . . . We know, of course, that the remarks of the trial judge were not intended to prejudice the jury. However, on the record in this case, and under the law stated in *State v. Ross, supra*, we cannot say that his comments were not construed by the jury as indicating a belief in the guilt of the accused. Appellant is entitled to a new trial."

In *State v. Gray*, 503 S.W.2d 457[8–9] (Mo.App.1973), at the close of the State's case the trial court addressed the defendant: "Will you be sworn, sir; are you going to testify?" No objection was made at trial, but in reversing under Rule 27.20(c) the supreme court said: "This is for the reason that the right of self-incrimination sought to be protected . . . is fundamental to our system of justice."

In our case, as in *Dixon*, we cannot say the jury did *not* construe the trial court's

---

1. "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

2. "THE COURT: He is making an objection, and the objection will be sustained, and the jury will be instructed to disregard that it is the duty of the prosecutor to prosecute persons that are not guilty. His duty is not to prosecute people that are not guilty."

conduct adversely to the defendant, and the defendant's right to be tried by an obviously impartial judge was, as in *Gray,* fundamental to our system of justice.

Here, the trial court's four-time *sua sponte* intrusion into the cross examination of defendant's only defensive witness could be construed by the jury as the court's disfavor of the alibi defense. It was not compatible with the fair trial to which the defendant was entitled. We consider that to be plain error under Rule 27.20(c).

We find the trial court failed to accord defendant a fair trial. The judgment is reversed and the cause is remanded for a new trial.

KELLY, J., concurs.

STEWART, J., dissents.

STEWART, Judge (dissenting).

In the format of the majority opinion we will first consider the substance of defendant's appellate argument. In viewing the contention of error in this case it is necessary to view the incidents leading to the trial court's sua sponte action. All of the comments of which defendant complains took place during the direct examination of Lorenzo Raybon, one of three alibi witnesses called by defendant.

The first incident of which defendant complains follows:

1. "Q. Was anything said there at the time about who would pay for the show?
   Mr. Allred: Objection. It asks for hearsay.
   The Court: Sustained.

   Q. Did Dwane Embry offer to pay any money?
   A. No.
   Mr. Allred: Objection. That calls for hearsay.
   The Court: Sustained.

   Q. Was anything said about who would pay?
   Mr. Allred: Objection. It's leading.
   The Court: Sustained."

2. "Q. Did Dwane Embry have any money on him that you know of?

"Q. Was anything said by him—Dwane Embry—[defendant]?

The Court: We're not going to permit that question. It's hearsay."

The second incident arose in the second question thereafter:

"Q. Did Embry, in your presence, ever offer to pay at the show?

The Court: You're asking for hearsay. We're not going to permit that question. Objection will be sustained."

Prior to these incidents on three occasions within two pages of the transcript questions of the same general nature were asked and objections on the part of the State were sustained.[1]

The other incidents complained of occurred on the fifth and sixth questions propounded thereafter:

"Q. Who paid the money to the cashier?

The Court: It's leading and suggestive, Mr. Kreisman. Proceed.

Q. After the money was paid, did you all go into the show?

The Court: It's leading and suggestive. Objection will be sustained."

Within three pages before these questions were asked the defendant had sought to elicit the same information on five different occasions.[2] At no time did defendant make

Mr. Allred: I'll object to the form of the question.
The Court: Sustained.

    .     .     .     .     .

Q. Do you know whether or not he had any money?
Mr. Allred: I'll object to the question, unless he first lays a foundation of some personal knowledge.
The Court: Sustained.

    .     .     .     .     .

Q. Did Embry go along with you and your brother? Did he have any money that you know of on him?
Mr. Allred: I'll object to the form of the question.
The Court: Sustained.
Q. Do you have any knowledge about his financial condition?

an offer of proof with respect to the objections that were sustained, yet he persisted in following the same lines of inquiry.

The comments of the court were not directed toward the defendant nor toward the witness but to counsel's persistence in following a line of inquiry that had just been ruled upon by the court.

This case can be readily distinguished from *State v. Wren,* 486 S.W.2d 447 (Mo. 1972). The court there stressed the fact that the court had used the expression "ad nauseum" and noted that the court there characterized the "evidence being offered [by the defendant] as absurd." Here the court's comments were directed to the form of the questions only, questions which had previously been ruled. The remarks of the court did not indicate a belief in defendant's guilt, impugn the credibility of defendant's witness, tend to humiliate defendant or his counsel or indicate a deliberate attempt by the judge to influence the jury. While a judge has the obligation to assure a defendant a fair trial and should act with impartiality; he must also confine the trial within the relevant issues and maintain order and decorum. *State v. Hudson,* 358 Mo. 424, 215 S.W.2d 441 (1948). When a court has ruled an issue it is improper for counsel to disregard the ruling of the court.[3] I would hold that at most the actions of the court were provoked. *State v. Headley,* 18 S.W.2d 37 (Mo.1929); *State v. Hudson,* supra. I find no prejudicial error.

Defendant made no objection to the rulings of the court until he filed a general objection to the conduct of the Judge in his Motion for a New Trial.[4] As a general rule any impropriety which might attach to a judge's remarks are waived by the failure to object at the time they are made. *State v. Hudson,* supra.

I do not believe that this case calls for the application of the "plain error rule" 27.-20(c). In my opinion *State v. McCullough,* 411 S.W.2d 79 (Mo.1967) is controlling. In *McCullough* on cross-examination of State's witness the following occurred:

> [Defendant's attorney]: "Did you see them pay for it?
>
> The Court: What's the purpose of that?
>
> The Witness: No.
>
> The Court: What's that got to do with the issues in this case?"

When defendant objected to a question asked by the prosecutor the court said:

> "Why don't you let him ask his question. He just gets started asking * * I don't know what the question is."

When the prosecutor objected to questions propounded by defendant's counsel the court remarked:

> "I don't know what the purpose of it is. Trying to shift the burden? Is that it? What's the purpose of it?"

The Supreme Court in that case said l.c. 81:

> "If a party believes that remarks may prejudice his cause, he should object immediately and afford the court an opportunity to correct any erroneous impression, and the issue is not timely presented when raised for the first time in a motion

---

Mr. Allred: Objection. Only the defendant would know of that.

. . . . .

Q. Why did you and your brother pay for the show?
Mr. Allred: Objection. It asks for a self-serving statement, Your Honor.
The Court: Sustained."

**3.** Rule 4 DR 7–106(A).

**4.** "That the court erred in inserting itself into the trial of this cause as an advocate on behalf of the State, in that the court did on numerous occasions during the cross-examination of the witnesses and on direct examination of defendant's witnesses, without any prior objections by the State, ordered the witnesses not to answer the question propounded to such witness and inviting an objection to be made by the State which the court thereafter sustained; that such action by the court was prejudicial to this defendant and indicated to the jury a prejudice against this defendant and in favor of the State;"

for new trial. (citations omitted) . . Nor are these remarks in themselves indicative of 'manifest injustice or miscarriage of justice' to invoke consideration of plain error under Criminal Rule 27.-20(c) V.A.M.R." (citations omitted).

See also *State v. Barron,* 465 S.W.2d 523[6] (Mo.1971); and *State v. Hudson,* supra.

This case is readily distinguishable from *State v. Dixon,* 463 S.W.2d 783 (Mo.1971) in which the jury could reasonably have viewed the comments of the court as reflecting upon the guilt of the defendant. The effect of the comments in *Dixon* was that prosecutors prosecute only the guilty not the innocent,[5] strongly implying that defendant was guilty because he was being prosecuted. The comments by the court in the present case were directed solely to counsel, as the jury could well understand, and were confined to matters upon which the court had already ruled and to a great extent to the form of the question only.

Nor do I feel that *State v. Gray,* 503 S.W.2d 457 (Mo.App.1973) is authority for the invocation of Rule 27.20(c) in this case. In *Gray* the trial court made a direct reference to defendant's failure to testify. This court emphasized the fact that defendant was defending pro se and that neither he nor counsel assigned to sit with him made an objection. The court specifically limited *Gray* to the cases in which a direct reference is made to the failure of a defendant to testify and clearly distinguished such cases from the case at bar. Referring to *McCullough,* supra, and similar cases the court in *Gray* said, "None of the cases are helpful, and each is distinguishable in that

each involved remarks made by the trial court on testimony given before the court."

I do not here, perceive a "sound substantial manifestation, . . . a strong clear showing that injustice or miscarriage of justice will result if the rule is not invoked." *State v. Meiers,* 412 S.W.2d 478 (Mo.1967).

For either of the reasons herein I would affirm the judgment.

---

5. "The Court: He is making an objection, and the objection will be sustained, and the jury will be instructed to disregard that it is the duty of the prosecutor to prosecute persons that are not guilty. His duty is not to prosecute people that are not guilty.

Mr. Howard: I don't believe I understand that, Your Honor. What was that again.

The Court: I said that it is the duty of the prosecutor not to prosecute persons that are innocent. I used a double negative.

Mr. Howard: Do I gather from that that the prosecutor has the duty to prosecute people who are not innocent?

The Court: He sure does."

. . . . .

(OUT OF THE HEARING OF THE JURY)

"Mr. Howard: Quite frankly, I am going to ask the Court for a mistrial. I think the Court has given the impression that the prosecuting attorney prosecutes only those persons who are guilty of a crime."