**STATE of Missouri, Respondent,**

v.

**Willie GILLESPIE, Appellant.**

**No. 56380.**

Missouri Court of Appeals,
Eastern District,
Division 1.

Jan. 15, 1991.

Beth A. Davis, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

A jury found defendant, Willie Gillespie, guilty of burglary in the second degree, § 569.170 RSMo 1986. The trial court sentenced defendant as a prior and persistent offender to fifteen years imprisonment. On direct appeal defendant claims the trial court erred: (1) in failing to sustain his motion for acquittal at the close of all the evidence because the state failed to establish unlawful entry; and (2) in failing to sustain his motion to suppress physical evidence consisting of a television remote control unit. Defendant also appeals from a dismissal of his untimely Rule 29.15 motion for post conviction relief. We affirm.

When reviewing defendant's challenge to the sufficiency of the evidence to sustain his conviction, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the state. *State v. Brown,* 744 S.W.2d 809, 810 (Mo. banc 1988). We follow this standard and find evidence that on December 21, 1987, police officers Armstrong and Bernard received a dispatch for an alarm sounding at 5806 West Florissant. Bernard observed defendant exiting the storm door located at the rear of the residence. Bernard identified himself as a police officer. Defendant began to run. Bernard chased, apprehended and placed defendant under arrest. Bernard conducted a pat down search and read defendant his Miranda rights. Later at the police station while taking inventory of defendant's clothing, Bernard found a television remote control unit in defendant's jacket pocket. Meanwhile, Officer Armstrong remained at the residence. She observed that the rear door had been forced and property was stacked on the sunporch.

The home owner testified at trial that he received a call from his burglar alarm service. Upon arriving home, he observed a broken and raised window. He also found that his property was stacked on the sunporch. At the police station, owner identified the television remote control unit as belonging to his tenant. The tenant testified he secured the doors and turned on the burglar alarm before leaving for work that morning.

■ Defendant first argues his motion for acquittal should be sustained because the state failed to establish an unlawful entry. Defendant claims there were no witnesses who could place him inside 5806 West Florissant, and that there was no evidence he entered or unlawfully remained

inside within the purview of § 569.170 RSMo 1986. Defendant relies upon *State v. Dudley*, 617 S.W.2d 637 (Mo.App.1981), and argues an equal inference can be drawn from the evidence that defendant is innocent because he came upon the scene after the burglary occurred. Further, defendant argues an equally valid theory is that he obtained the television remote control unit outside the scene of the burglary.

When the state's case depends upon circumstantial evidence only, "the facts must be consistent with each other and with the hypothesis of guilt, they must be inconsistent with innocence and they must preclude a reasonable hypothesis of innocence." *Dudley*, 617 S.W.2d at 639. In *Dudley* a police officer responding to an alarm of burglary observed the defendant standing in front of the store entrance. *Id.* at 638. Defendant, who was looking inside the store, was moving his arms and lips. When defendant saw the police officer he ran. *Id.* A second man jumped through the broken window and was never apprehended. *Id.* The court held the evidence did not demonstrate that defendant had associated himself with the burglary or the unidentified second man or that defendant had participated in the crime. *Id.* at 640.

Officer Bernard observed defendant exiting the residence. This testimony is direct evidence in support of the charge. Further, the evidence is consistent with guilt and precludes a reasonable hypothesis of innocence. *See State v. Rodden*, 728 S.W.2d 212, 213 (Mo. banc 1987). Defendant was in possession of a television remote control unit belonging to the tenant. Tenant testified that the residence was secured and the burglar alarm activated. The direct evidence of exiting proved entry. The direct evidence the house was locked and the absence of permission for defendant to enter proved unlawful entry. There was no similar proof in *State v. Dudley*. In addition there was circumstantial evidence to support a finding that it was defendant who broke the window and forced the rear door activating the burglar alarm. The court appropriately overruled defendant's motion for acquittal. *See*

*State v. Johnson*, 454 S.W.2d 27, 28–29 (Mo.1970) (Evidence sustained conviction where defendant was observed inside the building, was in possession of property and plasterboard was kicked in).

Defendant's second point argues the trial court erred by failing to sustain his motion to suppress physical evidence consisting of a television remote control unit. Defendant alleges the remote control unit was seized in violation of his right to be free of unreasonable searches and seizures under the United States and Missouri Constitutions. Defendant also contends the search was not an inventory search but was a pretext to discover incriminating evidence. Defendant argues none of the governmental interests enumerated in *State v. Friend*, 711 S.W.2d 508, 510 (Mo. banc 1986) that support the inventory process were served in the present case because: (1) Officer Bernard testified that when he patted defendant down at the scene nothing felt like a dangerous item; and (2) there was no indication that defendant possessed anything which needed to be safe guarded. We do not agree.

"Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v. Wells*, — U.S. —, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (citing *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987)). Another governmental interest which supports the inventory process is the need to safeguard the prison facility by preventing the introduction of objects which could be used to harm the inmates therein. *Friend*, 711 S.W.2d at 510. An inventory search must not be a subterfuge for a general rummaging in order to discover evidence of a crime. *Wells*, 110 S.Ct. at 1635. The state should possess standardized criteria or an established routine which governs the opening of containers found during inventory searches in order that the searches are designed in fact to produce an inventory. *Id.*

- "\n\n"

■ Here there is evidence indicating the inventory search which produced the remote control unit was conducted pursuant to standard procedures and furthered governmental interests. The following testimony supports the constitutionality of the search.

OFFICER BERNARD: ... I took him to the six [sic] district station to the jail room and booked him on the charge.

PROSECUTOR: And what do you mean by booking? What do you do at booking?

A. You take all the guy's—You do a more thorough search of the guy. You take his property from him. You package everything up.

Q. And when you were doing the more thorough search in order to package his property up, what if anything did you find?

\* \* \* \* \* \*

A. I located I know a Zenith remote control to a TV in his right front pocket....

\* \* \* \* \* \*

DEFENSE COUNSEL: ... Let's say you were to place me under arrest ... and that you you [sic] were going to take me back to the police station you were going to do what's called a booking where you take property off the person for a number of reasons. You're looking for evidence; right?

A. No. It's a procedure you go through when you are getting ready to place the guy in the cell. He has to have no property.

Q. Also to protect his property and look for evidence and—

A. Not for evidence.

Q. You take *everything* that's on him and put it in an envelope; right? (Our emphasis).

A. Right.

Accordingly, we find the trial court did not err in denying the suppression motion.

■ Defendant also makes a claim the motion court erred in dismissing his Rule 29.15 motion as untimely. On January 4, 1990, movant filed a pro se motion. The motion was untimely because it was filed more than thirty days after movant filed the transcript in his direct appeal. Rule 29.15(b). Movant's motion is time barred by the valid and mandatory provisions of the rule. *See Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

We affirm the conviction of defendant and judgment of the trial and motion courts.

PUDLOWSKI, P.J., and GRIMM, J., concur.