**STATE of Missouri, Plaintiff–Respondent,**

v.

**Randall K. MASSEY, Defendant–Appellant**

No. 22236.

Missouri Court of Appeals,
Southern District,
Division One.

April 7, 1999.

Ellen H. Fottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kevin F. Hennessey, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Randall K. Massey (defendant) appeals a judgment of conviction for the offense of murder in the first degree. § 565.020.1, RSMo 1994. This court affirms.

Defendant presents two allegations of trial court error. The first is directed to the trial court's denial of a claim asserted after trial and before sentencing that he received ineffective assistance of trial counsel. The second asserts the trial judge erred by inappropriately commenting on evidence in the presence of the jury.

Defendant does not question the sufficiency of the evidence. All evidence favorable to the state is accepted as true, including all favorable inferences drawn from the evidence. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Evidence and inferences to the contrary are disregarded. *Id.*

Defendant shot Donald Gene Leroy (Gene Leroy) in the back of the head. Gene Leroy died from those wounds. This occurred April 5, 1997, at defendant's parent's home in Douglas County.

Millie Hall, with whom defendant had lived off and on for about five years, was at the residence when defendant and Gene Leroy arrived about 10:00 p.m. Defendant wanted Gene Leroy to have sexual intercourse with Ms. Hall while defendant watched. Ms. Hall testified that she agreed because she was afraid defendant would kick her out of the house if she refused. Mr. Leroy and defendant removed Ms. Hall's clothing and their own clothing. Defendant sat in a chair in the living room. Mr. Leroy and Ms. Hall were

on the floor. Defendant became angry when Gene Leroy was unable to perform sexual intercourse with Ms. Hall. Defendant told them he should shoot them both.

Defendant left the room. Ms. Hall heard him "digging around" in the bedroom. She went to the room. Defendant had a gun. He slapped her and forced her back into the living room where he shot Gene Leroy. Millie Hall ran from the house, still without clothing, got into defendant's pickup truck and drove to her brother's house. Her sister-in-law called the sheriff's department.

Defendant's trial commenced in the Circuit Court of Wright County, Missouri, November 17, 1997. Evidence was completed and the case was submitted to the jury November 21. The jury found defendant guilty of murder in the first degree. Defendant requested and was given an additional 10 days in which to file a motion for new trial. *See* Rule 29.11(b). On December 16, 1997, defendant filed a motion entitled "Motion for Judgment of Acquittal Notwithstanding the Verdict, or, in the Alternative, for a New Trial." The legal file reflects a docket entry dated March 18, 1998, denying the motion and setting sentencing for March 27, 1998.

On March 27, 1998, defendant filed a motion entitled, "Motion to Correct Plain Error with Incorporated Suggestions in Support." The motion contended defendant had not received effective assistance of counsel at trial. It asserted defendant's trial counsel did not provide correct information concerning the effect of a life sentence without probation and parole; that his trial counsel erroneously advised defendant imprisonment for life meant imprisonment for a term of 30 years.

The trial court heard testimony in support of the motion. At the close of the evidence the trial court announced:

> Court finds that defendant was represented in all critical stages of the proceeding by Mr. Maturen and by Ms. Blau, that counsel investigated the case

and prepared the defendant for trial, represented the defendant at trial in a reasonably competent and professional manner.

> The Court further finds any admissions on the part of defendant's counsel do not, on the record to date, appear to have prejudiced the defendant by prejudicing his decision to proceed to trial or undermining the reliability of the trial.

> The Court finds and concludes there is no probable cause to believe he received ineffective assistance of counsel.

The trial court imposed sentence of life imprisonment without eligibility for probation or parole.

■ Point I asserts the trial court plainly erred and abused its discretion in denying defendant's "Motion to Correct Plain Error with Incorporated Suggestions in Support" because defendant was advised by his trial counsel in the course of plea negotiations that a sentence of life without parole would cause defendant to serve 30 years before he would be eligible for parole. It states this was incorrect and if defendant had been advised of the correct punishment for the offense of murder in the first degree, he would have accepted an offer for a negotiated plea of guilty to murder in the second degree with a sentence of life imprisonment or 25 years.

Defendant characterizes the motion to which Point I is directed as a "Rule 29.12" motion. He relies on a recent case from the Western District of this court, *State v. Tinoco*, 967 S.W.2d 87 (Mo.App.1998), as support for Point I.

In *Tinoco* the trial court granted a defense motion for a new trial based on ineffective assistance of counsel. Because the motion for new trial was not timely filed, its allegations were considered only for plain error. *Id.* at 89. The state appealed. It did not challenge the trial court's granting a new trial on the basis of plain error but challenged its authority to grant a new trial on the basis of ineffective assistance of counsel. *Id.* The state

claimed the trial court lacked authority to grant a new trial because the exclusive after-trial procedure by which a defendant can seek relief for a claim of ineffective assistance of counsel is a Rule 29.15 motion. *Tinoco* affirmed the trial court's order granting the new trial. It held that Rule 29.15 is the exclusive procedure *after* a defendant in a criminal case has been convicted and seeks relief from the conviction or sentence but is not the exclusive procedure for relief prior to sentencing. *Id.*

The procedure defendant has followed in this case differs from what was done in *Tinoco.* Defendant's motion, based on Rule 29.12(b), was independent of his previously denied motion for new trial. Rule 29.12 makes no provision for independent motions to enforce claims of plain error.

Rule 29.11 addresses after-trial motions that may be made in circuit courts. Rule 29.11(b) permits "[a] motion for a new trial or a motion authorized by Rule 27.07(c)" to be filed within 15 days following the return of a verdict (or within 25 days upon timely application for additional time and a showing of good cause). Rule 27.07(c) permits filing of a motion for judgment of acquittal when a jury has returned a verdict of guilty or has been discharged without returning a verdict. Rule 29.11 makes no provision for an independent after-trial motion based on a claim that plain error as defined in Rule 29.12(b) occurred.

This court holds that Rule 29.12(b) provides no basis for an independent motion. The trial court committed no error by declining to grant the relief sought. Point I is denied.

Point II is directed to an occurrence during closing arguments. It asserts the trial court erred by commenting on evidence; that the trial court " 'corrected' defense counsel's recollection of the evidence during an objection to the state's closing argument and thereby misled the jury as to the evidence and gave the court's imprimatur to the state's version of events."

Gene Leroy was shot in the course of a sexual encounter between him and defendant's girlfriend. The state presented evidence that defendant had urged Millie Hall and Gene Leroy to participate in a similar incident on Ms. Hall's birthday, March 15, 1997. Ms. Hall testified about the March 15 incident. She said defendant called Gene Leroy on March 15 and told him to come to their house; that when he arrived, defendant told him what she wanted for her birthday was to have sex with him. Ms. Hall testified that she did not have sexual intercourse with Mr. Leroy on March 15 "because he was drunk, he really couldn't do anything about it."

On cross-examination defendant's attorney, Mr. Maturen, asked Ms. Hall if she and defendant had gone out to eat on her birthday. She answered, "Not that I know of." Mr. Maturen continued, "And Gene came over that night around 9:30 or 10:00 PM, correct?" She answered, "Probably."

Defendant presented evidence about what occurred the evening of March 15. He called his uncle, Dale Massey, and Dale Massey's wife, Cora Ann Massey, as witnesses.

Dale Massey was asked if he saw defendant on Ms. Hall's birthday. He said he did not know if it was her birthday but he had seen defendant and Millie Hall on Friday or Saturday "the weekend after March 7[th]." He was asked if defendant told him he and Millie Hall had eaten at the Highway House Cafe. Dale Massey answered that he had.

Cora Ann Massey was asked if she had seen defendant and Millie Hall on March 15. She answered that she had; that she had seen them at her daughter's house. Mrs. Massey testified that it was a special occasion; that it was Ms. Hall's birthday; that they told her they had gone to the Highway House Cafe to eat. Mrs. Massey was asked how long she was with defendant and Ms. Hall that evening. She an-

swered, "I think they left between 9:30 and 10:00."

The state presented rebuttal evidence. One of the witnesses in rebuttal was Diane Leroy, the victim's widow. She said her husband left their home about 10:30 p.m. the evening of March 15. A lengthy bench conference followed concerning possible testimony by Ms. Leroy about a telephone call her husband had received that evening. After the bench conference she was asked by Ms. Koch, "Now you say he got a phone call and did you see where, what direction he went after he left the house?" Ms. Leroy answered, "Yes, he did, when he pulled out of the driveway he headed left out of the driveway going toward [defendant's]."

■ During the state's closing argument, Ms. Koch commented that Ms. Leroy testified her husband received a telephone call at "10:30 at night." An objection that the witness had not stated what time the call was made was overruled and Ms. Koch continued saying that Ms. Leroy testified that when her husband left he headed in the direction of defendant's home. The following then occurred:

> MS. KOCH [assistant attorney general]: And at that time the victim left and this was March 15 th and he went over in the direction of [defendant's] house.
> Now Millie didn't give a time when any of this happened on the 15 th.
> MR. MATUREN: I object, Judge, she testified it was 9:30 or 10:00, I specifically asked her that question on cross.
> THE COURT: We're talking about the 15 th of March?
> MS. KOCH: Yes.
> THE COURT: She testified 10:30, as I recall.
> MR. MATUREN: It was 9:30 or 10:00.
> THE COURT: That's not the way I remember but she's entitled to argue the evidence. Go ahead.

Point II is directed to the trial judge's remark that he recalled Ms. Leroy's testimony to be that the time of the call was 10:30.

■ Rule 27.06 provides, "In the trial of any criminal case the court shall not, in the presence of the jury, sum up or comment on the evidence." The trial judge's remarks violated this rule. Defendant did not object to the trial judge's remark when it was made although defendant's attorney requested a mistrial at the conclusion of the state's argument after the case had been submitted to the jury. "To preserve a claim of error directed to remarks of a trial judge, an objection must be made when they occur. *State v. Hudson,* 950 S.W.2d 543, 547 (Mo.App.1997). Since this was not done, if there was error the claim is waived unless the conduct was erroneous and amounted to conduct that affected defendant's substantial rights so as to result in manifest injustice or miscarriage of justice. *Id.* at 547–48; *see* Rule 30.20." *State v. Farmer,* 978 S.W.2d 68, 69 (Mo.App.1998).

In *State v. Haddix,* 566 S.W.2d 266 (Mo. App.1978), the Western District of this court explained:

> As held in *State v. Jones,* 197 S.W. 156, 158 (Mo.1917), "[t]he law so jealously guards the rights of a defendant, on trial for his liberty, that a trial judge should avoid any indication of feeling against the prisoner; an indication of his belief in defendant's guilt might determine the verdict." Bringing the matter into even sharper focus, as eloquently stated by Judge Learned Hand in *United States v. Marzano,* 149 F.2d 923, 926 (C.C.A.2d.1945), a trial judge "must not take on the role of a partisan; he must not enter the lists; he must not by his ardor induce the jury to join in a hue and cry against the accused ... (p)rosecution and judgment are two quite separate functions in the administration of justice; they must not merge." Whether an accused was afforded a fair and

impartial trial, *State v. Hill*, 518 S.W.2d 682, 685 (Mo.App.1975), is the ultimate test for determining whether a trial judge merely went up to as opposed to going beyond the brink in his conduct of the trial.

*Id.* at 273.

In *Haddix* the court concluded the trial court's inquiry concerning whether the defendant had been "lawfully confined" at the time he was charged with having escaped from a state institution was prejudicial error. *Id. Haddix* found that the trial court's remarks went to the sufficiency of the state's evidence concerning an essential element of the offense charged. It held that the trial court's actions strongly suggested the defendant's guilt was a foregone conclusion. The judgment was reversed and remanded for a new trial

Defendant's brief relies on three cases in which judgments of convictions were reversed for improper comments on the evidence by trial judges. *Haddix* is one of those cases. The other two are *State v. Lomack*, 570 S.W.2d 711 (Mo.App.1978), and *State v. Embry*, 530 S.W.2d 401 (Mo.App.1975).

*Lomack* involved a liquor store robbery. It occurred as the owner, his wife and an employee were opening the store. The owner testified a man armed with a gun and wearing a "pulled-up ski mask" followed the three into the store. The owner testified the robber did not pull the ski mask over his face until after the owner's wife exclaimed, "Robert Lomack." 570 S.W.2d at 712. The owner's wife testified she recognized the robber while he was running across a parking lot after he had entered the store. The employee testified that he recognized the robber as a longtime customer as the man ran across the parking lot. The employee identified the defendant in a line-up.

At trial the defense attorney questioned the employee about his statement concerning what had occurred. The attorney asked, "And a man came running up with a ski mask on and then pulls it up so you can look at his face," at which time the trial judge interjected, "He never said he was running." 570 S.W.2d at 712. The defense attorney was permitted to approach the bench where he objected to the court interjecting itself in the case. The trial judge overruled the objection saying, "Overruled, and you don't have any leeway to misquote the testimony. The man never said he was running. He said he came across the lot." *Id.*

In *Embry* the trial judge sustained objections to questions asked a defense alibi witness. Thereafter, questions were asked the witness but there were no objections made. The trial judge nevertheless announced, "You're asking for hearsay. We're not going to permit that question. Objection will be sustained." 530 S.W.2d at 402. The defense attorney asked the next question to which no objection was made. The trial judge interjected, "It's leading and suggestive. Objection will be sustained." *Id.*

Additional questions were asked to which the state's attorney objected and the trial judge sustained the objections. This was followed by two questions to which no objections were posed. The trial judge nevertheless prevented the witness from answering the questions stating, "We're not going to permit that question. It's hearsay," and "It's leading and suggestive, Mr. Kreisman. Proceed." *Id.*

The defense attorney in *Embry* did not object to the trial judge's comments or seek corrective action when the intervention occurred. The court concluded the trial court's actions constituted plain error. It described what had occurred as follows:

> In the four trial incidents related the witness testifying for defendant was attempting to support the defense—that defendant had no money and was at the movie and the restaurant during the robbery. The trial court "sustained two objections" the State had not made and twice *sua sponte* barred the witness from answering other questions.

530 S.W.2d at 403. The court concluded, relying on *State v. Wren*, 486 S.W.2d 447 (Mo.1972), that the defense was tenuous

but, if admissible, the defendant was entitled to have it presented free of the stamp of disapproval by the trial court.

In *Haddix* the offense charged was escape from a state institution in violation of § 557.351, RSMo Cum.Supp.1971. One of the elements of the offense was that the person had been "lawfully confined" in the institution at the time of the escape. 566 S.W.2d at 273. The comments of the trial judge went to the sufficiency of the state's evidence with respect to that element of the offense charged.

In *Lomack* the trial judge's comment went to evidence of the identity of the one charged. It alluded to circumstances affecting the witnesses' view of that defendant at the time the offense was committed. The court concluded the defendant in that case "was unfairly prejudiced by the comment because it precluded a defense contention that the robber's approach was so sudden as to prevent a good identification." 570 S.W.2d at 713.

■ In *Haddix, Lomack* and *Embry,* the evidence on which the trial judges commented bore directly on facts the respective juries were required to determine in order to find the defendants in those cases guilty. In this case, the evidence on which the trial judge commented was peripheral to the facts the jury had to find in order for defendant to be guilty. The evidence related to a different occurrence than the one that produced the murder charge. This court concludes that the remarks to which Point II is directed, although improper, did not preclude defendant from receiving a fair trial; that the trial judge in this case "went up to as opposed to going beyond the brink in his conduct of the trial." *Haddix,* 566 S.W.2d at 273. This did not result in plain error. Point II is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.