STATE of Missouri, Plaintiff–
Respondent,

v.

Cleveland JACKSON, Defendant–
Appellant.

Cleveland JACKSON, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 57159, 59853.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 9, 1992.

Henry B. Robertson, Brian N. Brown, St. Louis, Beth A. Davis, Union, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Cleveland Jackson appeals his conviction, after a three-day jury trial, of one count of illegal possession of a schedule II controlled substance, phencyclidine, Section 195.020, RSMo 1986 (repealed 1989). Additionally, Jackson appeals the denial of his Rule 29.15 motion for post-conviction relief, after an evidentiary hearing. We have consolidated Jackson's two appeals, pursuant to Rule 29.15(*l*). We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

The evidence adduced at trial, in the light most favorable to the verdict, is as follows. On July 23, 1988, at 8:00 p.m., Officer Francis Myers, of the St. Louis City Police Department, answered a telephone call from an unidentified female, who advised Myers that there was a short, heavy man, dressed in black pants and a gray shirt, standing in front of 5551 Cabanne who was in possession of some "water". "Water" is a street term for phencyclidine ("PCP").

Officer Myers, and his partner, Officer Bryan King, responded to the call. First, they drove to Union and Hodiamont to meet Officers Terrance Sloan and Gary Kukla. Myers and King informed Sloan and Kukla about the information that they received. They requested that Sloan and Kukla position themselves in the rear of 5551 Cabanne. On prior occasions, suspects had run into a Cabanne Court gangway to escape from police. Myers and King, therefore, wanted to prevent this suspect from running from police. Second, after Sloan and Kukla communicated that they were in position behind 5551 Cabanne, Myers and King drove west on Cabanne. They observed three subjects standing in front of 5551 Cabanne. One of the subjects, who had his back to the officers, matched the description that the caller had given Officer Myers.

Myers and King drove onto the lot in front of 5551 Cabanne, directed their high beams and spotlight on the three subjects and exited their marked police car. As the officers approached the suspect, the suspect turned, looked in the officers' direction and began walking at a fast pace through the front of the Cabanne Courts. Officer King radioed Sloan and Kukla, advising them that the suspect was coming their way. At that time, the suspect began to quicken his pace and run through the courtyard. The suspect, Jackson, threw a clear glass bottle, with a black cap, over the roof of the apartments. Myers recognized the bottle as one normally used in the carrying of PCP.

After throwing the bottle, Jackson stopped, raised his hands, turned to face the officers and stated: "[y]ou don't have a case on me now." Myers and King detained Jackson and walked him to the back of 5551 Cabanne. Once there, Officers Sloan and Kukla directed their attention to a bottle that they had seen come over the roof and hit a chain link fence. Officer Myers seized the glass bottle with a black cap. Officer Myers observed that the bottle contained an amber colored liquid which had a heavy smell of ether. Since the color and smell of the bottle were consistent with a bottle containing PCP, Officer Myers advised Jackson that he was under arrest for violation of the controlled substance laws. Officer Myers read Jackson his rights. Directly after Myers did so, Jackson made a statement to the effect that all that was in the bottle was a little bit of water and please don't put me away for a little bit of "wack" (another term for PCP).

Jackson did not testify at trial. He did, however, present the testimony of two witnesses to support his defense that he did not possess PCP.

At the close of the evidence, instructions and arguments of counsel, the jury found Jackson guilty of the charge of illegal possession of PCP. Following the verdict, Jackson made a series of grossly obscene comments to both the jurors and the court. As a result, the trial court found Jackson in criminal contempt of court and sentenced him to one year in a Medium Security Institution, consecutive to any sentence imposed in the underlying action. On August 4, 1989, the trial court sentenced Jackson, as a prior offender, to fifteen years imprisonment in the Missouri Department of Corrections and Human Resources. On August 10, 1989, Jackson filed his *pro se* motion to vacate, set aside, or correct judgment and sentence pursuant to Rule 29.15. The next day, Jackson filed his Notice of Appeal. On August 23, 1989, the trial court appointed the Special Public Defender's office to represent Jackson. On October 5, 1989, the trial court granted Jackson's motion to withdraw his *pro se* motion. On July 13, 1990, Jackson again filed a *pro se* motion to vacate, set aside or correct judgment and sentence pursuant to Rule 29.15. On July 15, 1990, the trial court appointed the Public Defender's office to represent Jackson in his post-conviction proceedings. On July 18, 1990, Jackson filed both a request for a hearing and a request for a change of judge. Two days later, the trial court granted Jackson's motion for a change of judge. After one extension of time, Jackson's counsel filed an amended motion on September 13, 1990. On November 15, 1990, the motion court held a hearing on Jackson's Rule 29.15 motion. The motion court resentenced Jackson to six months for the criminal contempt charge since six months is the maximum punishment for criminal contempt, absent a jury trial. On February 4, 1991, the motion court issued Findings of Fact, Conclusions of Law and Order, denying Jackson's motion for post-conviction relief. On March 8, 1991, Jackson filed his second Notice of Appeal. We have consolidated Jackson's two appeals, pursuant to Rule 29.15(*l*).

Jackson's first point is that the trial court erred in denying his motion for a mistrial during the prosecutor's closing argument since the prosecutor referred to Jackson's prior convictions and/or other crimes. Jackson argues that the prosecutor's arguments undermined his purpose of not testifying—to prevent the jury from finding out about his other convictions. The complained-of argument is as follows:

[THE PROSECUTOR]: Why else would he have thrown the bottle over the building and turned and said, "You ain't got no case on me now"? He knows what's going on. It's a game with him. Let's beat the cops now like I beat the cops before, like other people beat the cops.

[DEFENSE COUNSEL]: Objection, Your Honor. May we approach the bench?

THE COURT: You may sit down.

[DEFENSE COUNSEL]: I want the objection noted for the record for counsel's comments.

[THE PROSECUTOR]: [Defense counsel]—

THE COURT: Wait a moment, counsel. Come on up.

[Counsel approached the bench and the following proceedings were had]

[DEFENSE COUNSEL]: He said I'm going to beat them this time. The—counsel is making mention to prior convictions. That is why the defendant did not testify. That is his right. This jury is not supposed to know of prior convictions unless the defendant himself opens the door under testimony and under cross-examination. Counsel is making elusions [sic] to that, Your Honor. The Court knows that and I know that and the jury has become aware of that. I move for a dismissal.

THE COURT: Okay. You mean a mistrial?

[DEFENSE COUNSEL]: Mistrial. I'm sorry. Unfortunate it may be—

[THE PROSECUTOR]: I wasn't attempting to elude [sic] to this defendant. There's been plenty of evidence that these officers have been over there on numerous prior occasions where the suspects have run through this—the back.

[DEFENSE COUNSEL]: Not on this defendant. And he's talking about this defendant.

[THE PROSECUTOR]: If the Court wants to instruct the jury to disregard the one comment—

[DEFENSE COUNSEL]: Your Honor—

[THE PROSECUTOR]: I don't think it's enough for a mistrial at this point. I think there's been too much evidence about other situations. I think that's what the jury—

[DEFENSE COUNSEL]: Your Honor—

[THE PROSECUTOR]: —understood.

THE COURT: One at a time. Give him a chance to finish.

[DEFENSE COUNSEL]: Are you finished? Your Honor, the testimony that the defendant could have provided could have helped, but also the fact that his prior convictions could have hurt him. Therefore, he opted for not testifying under my advice.

Counsel has defeated everything that I did to keep this jury from finding out about other convictions, which might prejudice against them to the defendant. He has eluded [sic] to other prior crimes that this defendant may have committed, and that, Your Honor, is grounds for dismiss—mistrial.

THE COURT: Are you finished?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Are you sure?

[DEFENSE COUNSEL]: Yes.

THE COURT: Are you going to let me talk now?

[DEFENSE COUNSEL]: Yes.

THE COURT: I think in the context of the entire argument, although it certainly was a risky thing for him to do, I don't think it was intentional. I think it was just in the heat of the argument. I don't think the jury picked up on it. I'm going to deny the motion for mistrial.

[DEFENSE COUNSEL]: Okay, Your—

THE COURT: Excuse me, sir. I ruled. I'm not finished. Will you let me finish?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Now the question then remains, do you want any further relief? And you have to draw a question and ask yourself, do you want it highlighted by going back after this lengthy conversation and having me tell them to disregard that comment? I don't think they have any idea why we're up here unless I tell them to disregard the comment.

[DEFENSE COUNSEL]: I agree, Your Honor.

THE COURT: Suit yourself. You can stand on your motion for a mistrial—

[DEFENSE COUNSEL]: I agree, Your Honor. I think that any further comment will only aggravate the circumstances. Therefore, I will not ask the Court to say anything more to it. I will stand on my motion for mistrial.

THE COURT: I understand that. And I want the record to be clear that any other relief at this point might be more harmful than advantageous to you. The

reason I say that is, the Court of Appeals is going to be called up to decide this issue. I don't want you to be boxed in on the situation that you had other relief.

I'm making the offer, but I think under the circumstances here that—I don't know. I don't believe in the context of the entire argument—I noticed no influx and I saw no touching anyone, okay? I may not have seen it. I don't think it's worthy of a mistrial and I'm just going to say—unless you specifically ask me to do something for them—you may proceed.

[DEFENSE COUNSEL]: I have nothing but the motion. [Proceedings return to open court]

■■■ Granting a mistrial is a drastic remedy. *State v. Leisure*, 810 S.W.2d 560, 571 (Mo.App.1991). It should only be utilized where there is grievous error which cannot otherwise be remedied. *Id.* The granting of a mistrial rests largely in the discretion of the trial court because the trial court is in a better position to determine any prejudicial effect from the alleged error. *Id.* In order to hold that the failure to grant a mistrial was reversible error, we must conclude, after reviewing the entire record, that as a matter of law, the error was so prejudicial that its effect was not removed by the trial court's action. *Id.*

■■■ Here, the prosecutor's statement does not contain the word "conviction" or any other similar language. It is neither a direct or indirect reference to Jackson's prior convictions. It is, however, a reference to other *possible* criminal acts. The trial court, having seen the incident, could judge its impact on the jury. *State v. Vitale*, 801 S.W.2d 451, 455 (Mo.App.1990). The trial court, outside the presence of the jury, stated: "I don't think the jury picked up on it. . . . I don't think they have any idea why we're up here unless I tell them to disregard the comment. . . . I noticed no influx and I saw no touching anyone, okay?" Here, Jackson has neither demonstrated that the trial court clearly abused its discretion nor that he was substantially

prejudiced. Jackson's first point is, therefore, denied.

Jackson's second point is that the trial court erred by demonstrating a biased and partial attitude throughout his trial. Specifically, Jackson contends that the trial court's conduct toward Jackson, Jackson's counsel and Jackson's witnesses, both in and out of the jury's presence, and the trial court's improperly and unduly harsh sentences, taken cumulatively, constitute impermissible judicial vindictiveness which prejudiced Jackson.

■■■ At the outset, we note that defense counsel did not raise this objection at trial, and, thus, it is only entitled to plain error review under Rule 30.20. Under the plain error standard of review, the error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice would result if left uncorrected. *State v. Thomas*, 791 S.W.2d 861, 862 (Mo.App. 1990). The burden of demonstrating that the trial court's action resulted in manifest injustice is allocated to the defendant. *Id.* The standard of review for examining the conduct of a trial judge is whether the trial court's conduct is such as to prejudice the minds of the jury against the defendant thereby depriving the defendant of a fair and impartial trial. *State v. Koonce*, 731 S.W.2d 431, 441 (Mo.App.1987), quoting *State v. Puckett*, 611 S.W.2d 242, 244 (Mo. App.1980). Whether there was prejudice depends on the context and words in each case. *State v. Koonce*, 731 S.W.2d at 441. The trial court must maintain a position of absolute impartiality, avoid any conduct which might be construed as indicating a belief on the part of the judge as to the guilt of the defendant. *Id.* Moreover, a judge must maintain a neutral attitude and avoid any demonstrated hostility which might impair the appearance of impartiality. *State v. Clay*, 763 S.W.2d 265, 268 (Mo.App.1988).

■■■ This does not mean, however, that the trial judge may not correct counsel, when necessary, as long as it is not done in a contemptuous manner, or that he may not summarize evidence in explaining a ruling, as long as it is not a statement of

facts as a matter of law. *State v. Thomas*, 791 S.W.2d at 863. Moreover, a trial judge may question witnesses in order to clarify testimony. *State v. Clay*, 763 S.W.2d at 268. The judge, in so doing, must not indicate a belief in either the guilt or innocence of the accused. *State v. Koonce*, 731 S.W.2d at 441, quoting *State v. Montgomery*, 363 Mo. 459, 251 S.W.2d 654 (1952). Nor may the judge let such belief be reflected or even conjectured by the jury in his treatment of either counsel. *State v. Koonce*, 731 S.W.2d at 441. The factors used to determine the propriety of any comment include whether the trial judge volunteered the comment, whether the comment was made in response to an objection as part of the court's ruling, whether the comment was made in the jury's presence and whether the jury could have construed the comment to prejudice the defendant. *Id.*

 There is no error as long as the trial judge does not express an opinion as to the nature, content or truthfulness of evidence. *State v. Thomas*, 791 S.W.2d at 863. Finally, the propriety of a trial judge's comments depend largely upon his tone of voice, facial expressions and other similar factors which give content to the trial episodes and the rulings thereon. *Id.* Since those factors are not reflected in the record on appeal, we must largely defer to the trial court's superior vantage point to appraise the trial situation. *Id.*

 We have reviewed the record of the alleged improper comments. We hold that the trial judge's statements did not violate his judicial duty to remain impartial. He neither expressed an opinion on the evidence nor commented on Jackson's guilt or innocence. The trial judge made all but one of his comments outside the jury's presence. Further, the court offered no biased or prejudicial comments to Jackson's counsel. The plain error rule is to be used sparingly. *State v. Koonce*, 731 S.W.2d at 442. It must be invoked on a case by case basis, and there must be a sound, substantial manifestation, a strong, clear showing, that injustice or a miscarriage of justice resulted. *Id.* We find no such plain error here. Jackson's second point is, therefore, denied.

 Jackson's third point is that: (1) on June 23, 1989, a jury convicted him of illegal possession of a controlled substance; (2) on August 4, 1989, the trial court sentenced him to fifteen years imprisonment; (3) on August 11, 1989, Jackson filed his Notice of Appeal; (4) on August 28, 1989, the Comprehensive Drug Act of 1989 ("the Act") became effective; (5) the 1989 Act repealed Sections 195.020 and 195.200, RSMo 1986, the Sections under which the jury convicted him; (6) in their place, the legislature adopted Sections 195.202 and 558.011.1(3), RSMo Cum.Supp.1991, under which the possession of a controlled substance, except thirty-five grams or less of marijuana, is a class C felony for which the maximum term of imprisonment is seven years; and (7) applying Section 1.160(2), RSMo 1986, which provides that a defendant should benefit from an "amendatory law" statute which reduces the penalty for the crime for which the jury convicted him, we should remand his case to the trial court for resentencing.

The State of Missouri raises two arguments as to why Section 1.160(2), RSMo 1986, does not apply. First, the State argues that the Act is not an "amendatory law". Second, the State argues that this case was not "pending" at the time the Act became effective. We will address each of the State's arguments separately.

The State argues that the Act repealed Sections 195.020 and 195.200, RSMo 1986, rather than amending those Sections. Recently, the State raised this same argument in *State v. Sumlin*, 820 S.W.2d 487, 490 (Mo. banc 1991). In that case, the supreme court explained that although the Act includes language of repeal, this language is not significant. *Id.* The court further explained that the General Assembly typically repeals old provisions and enacts new provisions when it is, in actuality, amending the old provisions. *Id.* Finally, the court explained that a close look at the Act indicates it to be a comprehensive "alteration" of Missouri's drug laws that divided the many offenses previously contained in Section 195.020, RSMo 1986, among several different new sections. *Id.* The court held that, as such, the provisions of Section 1.160(2) clearly applied to its case. *Id.*

We, similarly, hold that, the Act, as a comprehensive alteration of Missouri's drug laws, amends Sections 195.020 and 195.200, RSMo 1986, and, therefore, applies to this case.

 Additionally, the State also argues that, for the purposes of Section 1.160(2), RSMo 1986, a prosecution is "pending" only until judgment is announced and a sentence imposed. The State also raised this argument in *State v. Sumlin,* 820 S.W.2d at 490. The supreme court explained that, until a judgment becomes final, an appellate court can remand the case to the circuit court for a new trial or a new sentencing procedure at which time a new penalty may be assessed. *Id.* The court, therefore, held that a case is "pending" until direct review has been exhausted. *Id.* We, too, hold that Jackson's case is pending until his appeals are exhausted. Moreover, we are not persuaded by the State's argument that construing a case as pending while it is on appeal will result in inconsistency. As the court noted in *Sumlin,* 820 S.W.2d at 490, any bright-line rule will result in some circumstances that seem inconsistent or inequitable. However, until the General Assembly enacts new legislation which would change the line here drawn, the provisions of ·Section 1.160(2) will apply to cases pending on appeal. *Id.*

 Thus, since: (1) a jury convicted Jackson of violating Section 195.020.1, RSMo 1986; (2) the trial court sentenced Jackson under Section 195.200, RSMo 1986; (3) Section 1.160(2), RSMo 1986, authorizes a defendant to move for a reduction of sentence if the penalty for his offense has been reduced subsequent to the commission of the offense but before the conviction becomes final; and (4) Jackson has so moved, Jackson is entitled to relief. We, therefore, remand this case to the trial court for resentencing as provided for by Sections 195.202 and 558.011.1(3), RSMo Cum.Supp.1991. Thus, the trial court may sentence Jackson to a maximum of seven years imprisonment for his possession of PCP.

Jackson's fourth point is that the motion court erred in denying his motion for post-conviction relief pursuant to Rule 29.15. Specifically, Jackson argues that his trial counsel was ineffective since defense counsel failed to impeach Officer Myers' testimony with a prior inconsistent statement Myers made at a preliminary hearing. Jackson argues that he was prejudiced because the statements related to visibility, a crucial issue in his case.

 Appellate review of a motion court's findings and conclusions is limited to a determination as to whether the findings and conclusions are clearly erroneous. *State v. Dunmore,* 822 S.W.2d 509, 512 (Mo.App.1991). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Id.*

 Furthermore, to prove a claim of ineffective assistance of counsel, appellant must show that: (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) he was prejudiced thereby. *Id.* If an appellant fails to prove either of these prongs, his claim of ineffectiveness fails. *Id.* Additionally, in order to prove that he was prejudiced by his counsel's deficient performance, he must show that, but for his counsel's errors, a reasonable probability exists that a different outcome would have resulted. *Id.*

Initially, we note that defense counsel did not represent Jackson at Jackson's preliminary hearing. However, defense counsel had another attorney's notes from the preliminary hearing. Those notes indicated that Officer Myers stated that he was thirty feet away from Jackson when he saw Jackson throw the bottle. At trial, Officer Myers testified that he was five feet away from Jackson when Jackson threw the bottle.

 At Jackson's Rule 29.15 hearing, defense counsel testified that his trial strategy was to show that the police fabricated their testimony and that Jackson did not throw anything. Defense counsel stated that he wanted to show that Jackson could not throw the bottle over the building, based on the location of where the officers said the bottle landed. Defense counsel further stated that he did not be-

lieve the minor inconsistency in Myers' testimony was sufficient to aid Jackson's case. Finally, defense counsel stated that he chose, as a matter of trial strategy, to focus on his defense theory rather than on inconsistency. Failure to impeach a witness as a matter of trial strategy does not serve as a basis for a charge of ineffective assistance of counsel. *Roberts v. State,* 775 S.W.2d 92, 95 (Mo. banc 1989). Moreover, Jackson has failed to prove that he was prejudiced by defense counsel's performance as Jackson failed to show that, but for his counsel's errors, a reasonable probability exists that a different outcome would have resulted. Jackson's fourth point is, therefore, denied.

For these reasons, the trial court's decision is affirmed in part, reversed in part and remanded for resentencing. The motion court's decision is affirmed.

PUDLOWSKI, P.J., and CRIST, J, concur.