STATE of Missouri, Respondent,

v.

Michael SHACKELFORD, Appellant.

No. 62080.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 17, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 16, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Dave Hemingway, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant, Michael Shackelford, was found guilty by a jury of selling a controlled substance, cocaine, in violation of § 195.211 RSMo (Supp.1991). He was sentenced as a Class X offender to twelve years' imprisonment. We affirm.

The evidence most favorable to the state's case is that on September 16, 1991, St. Louis City Police Officer Darren Whitehorn was working undercover with the Street Corner Apprehension Team (SCAT), an undercover narcotics unit. Officer Whitehorn was driving an unmarked police car. He noticed defendant standing along the street. The officer pointed to his nose, which indicated that he wanted cocaine. Defendant then motioned for the officer to pull up next to him, which Officer Whitehorn did. Defendant asked the officer what he needed. Officer Whitehorn told defendant he wanted a "fifteen piece", or fifteen dollars worth of cocaine.

Defendant then entered the unmarked police car and told the officer to drive to a specific location. He directed Officer Whitehorn to pull up next to three men. Defendant told one of the men, Corey Leonard, that the officer wanted a "fifteen piece." Leonard handed defendant a small off-white chunk, which later tested to be cocaine. Officer Whitehorn gave defendant fifteen dollars. Defendant then handed the cocaine to the officer and gave the money to Leonard. Defendant and Leonard were thereafter arrested.

In his first point, defendant alleges the trial court erred in denying his claim that the state used several of its peremptory strikes in a racially discriminatory manner to remove African–American venirepersons from the jury in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecution used six of its seven peremptory challenges against African–American venirepersons.

■ Once a defendant raises a Batson challenge, the state must then come forward with reasonably specific race-neutral explanations for the strike. State v. Parker, 836 S.W.2d 930, 939 (Mo. banc 1992). If the prosecution articulates an acceptable reason for the strike, the defendant must then show that the state's offered reasons were merely pretextual and the strikes were racially motivated. Id. Our review of a Batson challenge is limited to a determination of whether the finding is clearly erroneous, and we must give extreme deference to the trial court's finding. Hernandez v. New York, 500 U.S. ——, —— – ——, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395, 409–410 (1991). Unless a discriminatory intent is inherent in the explanation of the prosecutor, the reason given will be deemed race-neutral. Parker, 836 S.W.2d at 934.

■ Following defendant's Batson challenge, the prosecutor offered his explanations for each peremptory strike. The prosecutor explained he struck Marzee Burns because she showed up late for the trial, and he did not like to select jurors who arrive late. The prosecutor added that all other jurors who had arrived late were stricken for cause. None of the venirepersons who arrived late were selected for the jury.

■ The state also struck Scena Thompson, who stated she had a list "a mile high of friends and relatives" that had been convicted of crimes, including drug-related offenses. The prosecutor explained he struck Thompson because she knew many people, both relatives and friends, who used drugs and were convicted of drug offenses. Although some of the white jurors had a friend or relative who had been convicted, no other juror indicated that he or she had a "mile-high list" of friends or relatives involved with drugs or convicted of drug offenses. Defendant contends striking Thompson was discriminatory because one of the white jurors selected had been arrested for burglary. The crime, however, had occurred more than fifteen years earlier when the juror was only seventeen. Defendant also complains that two white jurors had DWI convictions. The state did not, however, strike Thompson because she had any prior DWI arrests or convictions.

■ The state also challenged Ola Crusoe, who indicated her son had been on drugs and sold drugs to support his habit. The prosecutor explained he struck Crusoe because she was a "motherly type" whose son had been convicted of a drug charge. The prosecutor further explained he had previously had bad responses from women jurors, with children about the same age as a defendant, trying to decide if a defendant was guilty. Venireperson Ingold was the only white juror with a child who had been incarcerated. Her son, however, was not convicted of a drug-related offense. Therefore, it was not as likely Ingold would identify closely with defendant as would Crusoe.

■ Geraldine Swinson was also stricken by the state. Her sister had been convicted of a drug offense, but she believed her sister had been wrongly accused. Swinson initially indicated she would be biased against the state because of her sister's experience. The prosecutor stated he struck Swinson because Swinson believed her sister had been wrongly accused and she would be biased against the state. None of the jurors selected stated that he or she had a relative who they believed had been wrongfully convicted of a drug offense.

■ The state also struck Gloria Smith, who mentioned the defense of entrapment during voir dire. The prosecutor indicated he did not want to select a juror who would be thinking of possible entrapment during the trial. He further offered that he also struck Smith because she had a friend who had been executed while incarcerated; he preferred not to select a juror who had a friend or relative executed while imprisoned. None of the jurors selected mentioned possible defenses during voir dire, or knew anyone who had been executed while in prison.

■ The state's final challenge was Charles McDonald, who stated he preferred to convict on physical evidence rather than on witness testimony. The prosecutor first attempted to have McDonald stricken for cause. He indicated he struck McDonald because he was hesitant to select a juror who did not want to convict on witness testimony alone.

The trial court accepted the prosecutor's explanations as race-neutral. Reviewing the prosecutor's strikes under the factors set out in *Parker*, we find no clear error on the part of the trial court in accepting the prosecutor's explanations. The defendant did not establish that the strikes were merely pretextual. We find nothing to leave us firmly convinced an error was committed by the trial court. Point denied.

In his second point, defendant contends the trial court erred in permitting a police officer to testify that Corey Leonard, who was arrested along with defendant, had previously been arrested by a SCAT team. Defendant claims this evidence was prejudicial because of the tendency of the evidence to infer defendant's guilt by virtue of his association with someone who previously committed an identical crime.

The prosecution did not offer this evidence during its case. The testimony was elicited when defendant called Police Officer Rodney Brunson, who arrested Leonard, during his case. On direct examination, Officer Brunson testified that SCAT generally uses photocopied money for drug transactions. He further testified that when he arrested Leonard, none of the photocopied money was found on Leonard. During cross-examination, the prosecutor asked whether Leonard was familiar with SCAT; over objection, Officer Brunson stated that the SCAT team had previously arrested Leonard.

In a similar case, *U.S. v. Troupe*, 702 F.2d 145, 146–147 (8th Cir.1983), the court found that evidence of the prior arrest of the defendant's key witness did not constitute prejudicial error. Although not addressing the "guilt by association" argument raised here by defendant, the court found that evidence of the witness' prior arrests, if error at all, was harmless when the witness' cross-examination was full of testimony that discredited her credibility apart from the previous arrests. *Id.* at 147.

■ This same type of analysis may be applied to the situation here. Error, if any, in permitting evidence of Leonard's prior arrest was nonprejudicial when the evidence of defendant's guilt was overwhelming.

*See State v. Johnson,* 733 S.W.2d 779, 781 (Mo.App.1987). When the evidence of guilt is strong, error which in a close case might call for reversal may be nonprejudicial. *Id.* Here, there was overwhelming evidence of defendant's guilt. Officer Whitehorn testified about defendant's participation in the drug transaction. The officer was wearing a hidden microphone which recorded the entire transaction. The audio tape was played at trial for the jury. Defendant prepared a written statement of what had occurred for the police. In the statement, he acknowledged participation in the drug deal. The statement was read to the jury at trial. Evidence was presented that the off-white substance defendant gave to Officer Whitehorn was cocaine. Clearly, the state presented strong evidence against defendant.

Defendant relies on several cases in support of his claim that evidence of Leonard's prior arrest was prejudicial error as it promoted a conviction based on guilt by association. *See, e.g., State v. Beck,* 745 S.W.2d 205 (Mo.App.1987); *State v. Crane,* 559 S.W.2d 294 (Mo.App.1977); *State v. Diamond,* 532 S.W.2d 873 (Mo.App.1976). The cases cited by defendant, however, are distinguishable from this case. In *Beck,* 745 S.W.2d 205, the defendant was arrested for illegal possession of marijuana. A passenger in his car at the time of the arrest had valium in her possession. Evidence that the passenger had valium tablets in her possession was introduced by the state during its case, and the prosecution devoted a significant amount of the trial to establishing that fact. The court found that the prosecution's "extensive trial-long concentration" of the passenger's drug possession was prejudicial. *Id.* at 208. Here, the state did not introduce any testimony during its case of Leonard's prior arrest. The prosecution introduced the evidence only after defendant raised the issue of Leonard's arrest, and did not devote a significant part of trial to Leonard's arrest.

In *Crane,* 559 S.W.2d 294, the state introduced evidence of the reputation of an "accomplice of an accomplice." The court found this evidence was prejudicial, because the only evidence against the defendant was circumstantial and the jury may have been influenced by the evidence. *Id.* at 296–298. Here, the prosecution presented substantial direct evidence of defendant's guilt. The prosecutor's case against defendant was strong, and defendant was not prejudiced as was the defendant in the *Crane* case.

In *Diamond,* 532 S.W.2d 873, the defendant was on trial for automobile theft. During cross-examination of one of the defendant's witnesses, the prosecutor asked whether the witness had been involved in a prior automobile theft. The witness denied any involvement in the theft. The prosecutor then offered rebuttal evidence that the witness participated in the prior theft. The appellate court found that the trial court erred in allowing evidence of an act collateral to the issue of the case. *Id.* at 875. The court did not hold, however, that the trial court erred in allowing the prosecutor to ask the witness about the prior theft, but that the state should not have introduced rebuttal evidence on a collateral issue. In this case, the state did not introduce rebuttal evidence to attack another witness' testimony.

The prosecution did not devote a substantial portion of the trial on the prior arrest of Leonard. Throughout the trial, only two statements were made regarding Leonard's prior arrest. This evidence was introduced only after the defendant presented evidence that Leonard did not have any of the photocopied money on him when he was arrested. Considering the strong evidence of defendant's guilt, error, if any, in allowing the statements regarding Leonard's prior arrest was not prejudicial. Point denied.

Defendant's final claim is that the trial court erred in denying a mistrial or in not holding a hearing to determine if any jurors heard the judge make a comment about defendant's prior convictions. Defendant contends the evidence did not conclusively demonstrate no jurors heard the judge's remark, and that the comment was "potentially" prejudicial.

At the close of the state's case, the trial court granted a recess. The judge, sitting at the bench, then asked defendant's counsel, "are you ready to do priors?" Defendant's counsel objected, stating the jurors were not completely out of the courtroom when the

judge made the statement. Defendant's counsel indicated she was unsure whether the jury heard the judge's remark. The prosecutor stated he did not believe any jurors were still in the courtroom at the time of the statement was made, but suggested the judge could question the jury as to whether they heard anything. At that point, the judge stated he believed it would aggravate the situation to ask any questions of the jurors. The trial judge stated he had made the comment in a normal tone of voice and did not believe any of the jurors had heard his comment.

After the close of defendant's case, the court made a record of what two bailiffs who were in the courtroom heard when the judge remarked about defendant's priors. Deputy Sheriff Harold Beck had been seated in the middle of the courtroom; he stated that he believed the jurors were completely out of the courtroom at the time the statement was made. Beck stated he was aware the judge had said something, but could not distinguish what was said. Deputy Sheriff Gary Vehlewald was seated about four feet from the judge. Vehlewald stated that when the judge made the remark, he looked around the courtroom to see if any jurors were in the room. Vehlewald saw one person, perhaps a juror, at the threshold of the door with her back to the judge, at the beginning of the judge's statement.

The judge added that he was seated forty-five to fifty feet from the door where the jurors exited when he commented on defendant's priors. He said he made the statement at what he believed to be an appropriate time. The trial court denied defendant's request for a mistrial and did not voir dire the jury to ascertain whether they heard the judge's comment.

■ The granting of a mistrial is a drastic remedy. *State v. Jackson*, 836 S.W.2d 1, 6 (Mo.App.1992). It should be utilized by a trial court only where there is grievous error which cannot otherwise be remedied. *Id.* Granting a mistrial rests largely in the discretion of the trial court. *Id.* In order to hold that the trial court's failure to grant a mistrial was reversible error, we must conclude, as a matter of law,

the error was so prejudicial that its effect was not removed by the trial court's action. *Id.*

■ Here, the trial judge determined he made the comment about defendant's priors at an appropriate time. The judge stated he was some distance from the jury and did not believe the jury heard his remark. Defendant has not demonstrated that the trial court clearly abused its discretion in denying the mistrial.

■ Defendant has also failed to show that the trial court should have voir dired the jury to determine if any of the jurors heard the judge's comment. Several of the cases relied upon in support of this claim involve situations of alleged juror misconduct. *See, e.g., State v. Post*, 804 S.W.2d 862 (Mo.App. 1991); *State v. Harvey*, 730 S.W.2d 271 (Mo. App.1987); *State v. Stith*, 660 S.W.2d 419 (Mo.App.1983). Here, however, there is no allegation of juror misconduct. The sole case cited by defendant which addressed the issue of statements made by a trial judge is *State v. Embry*, 530 S.W.2d 401 (Mo.App.1975). In that case, the trial judge intervened during examination of the defendant's witness. *Id.* at 404. That is not the situation here.

■ The judge determined that the jurors did not hear his comment. We defer to the trial court's finding. A trial judge's remark made outside the presence of the jury does not prevent a defendant from receiving a fair and impartial trial. *State v. Newberry*, 605 S.W.2d 117, 124 (Mo.1980). Point denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.