STATE of Missouri, Plaintiff–Respondent,

v.

Terri WEBBER, a/k/a Annie Ames, Defendant–Appellant.

No. 21990.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 30, 1998.

318

Larry Maples, Carthage, Attorney for Appellant.

Duane A. Cooper, Pineville, Attorney for Respondent.

Before SHRUM, P.J., MONTGOMERY, J., and GARRISON, C.J.

PER CURIAM.

Terry Webber, a/k/a Annie Ames ("Appellant"), was convicted by a jury of one count of the class A misdemeanor of resisting arrest and one count of the class D felony of unlawful use of a weapon. The trial court granted a new trial on the charge of unlawful use of a weapon and sentenced Appellant to time served on the resisting arrest charge.[1] Appellant now appeals from the judgment and sentence for resisting arrest.

On May 22, 1996, Sergeant Miles Parks of the Missouri Highway Patrol, along with two other Highway Patrol troopers and a deputy from the McDonald County Sheriff's Department, went to the property where Appellant was residing to arrest her on an outstanding warrant for failing to appear on a traffic citation. Sergeant Parks shouted an announcement of their arrival and identified himself and the others as law enforcement

1. Appellant waived jury sentencing.

officers. All of the officers except Sergeant Parks were in uniform. Appellant appeared in a window of the home on the property and began yelling something to the effect of, "What do you want? You have no business here. You're trespassing." She also produced a handgun which was pointed in the general direction of the officers, although not aimed at any of them. She held the gun out the window for approximately thirty seconds, then removed the gun from the officers' sight. The officers informed Appellant that they had a warrant for her arrest, to which Appellant responded that the officers needed a search warrant to come in and get her, she was not going to jail, and the officers could have another "Ruby Ridge" if that is what they wanted.[2] The officers left the property shortly thereafter.

Later that day, Appellant called a local television station and asked that they come to the property. When the reporter arrived, Appellant was carrying a rifle and wearing a pistol on her hip and a knife on her back. During the interview, when asked what she would do if the officers came back, Appellant responded, "You see I'm armed don't you." Some clips from this interview were broadcasted on local news.

■ In her first point on appeal, Appellant contends that the trial court erred in making a comment in the presence of the jury with regard to testimony which Appellant's attorney was attempting to elicit from her. The comment in question is that which is italicized in the following quote from the trial transcript:

> [Appellant's Counsel]: Now, let's talk about a little bit why you're here today.

Okay? And I guess initially it started with a traffic citation?

[Appellant]: Right.

[Appellant's Counsel]: Okay. Just in a few words tell us what happened and what you did. Okay?

[Appellant]: What?

[Prosecutor]: I'm going to object to the relevance of this, Your Honor.

[Court]: I—I'm having trouble seeing the relevancy here. You want to—

[Appellant's Counsel]: Oh, Judge, all I want the witness to say is just that she had a citation, and then I don't want her to see—don't want her to tell how she got it, just that she has the citation and what—how she fought it to the upper Supreme Court.

[Court]: *Well, just make it snappy because I don't think it amounts to much.*

(Emphasis added.)

Appellant contends that this comment deprived her of a fair trial because it appeared to state the trial court's opinion on the testimony, and it indicated the court's impatience with Appellant's attorney.[3] She concedes, however, that she did not object to the comment at trial, and thus she requests that we review for plain error under Rule 30.20.[4] Under the plain error standard of review, the error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice would result if left uncorrected. *State v. Jackson*, 836 S.W.2d 1, 6 (Mo.App. E.D. 1992). In this instance, we will review for plain error pursuant to this standard.

---

2. The reference to "Ruby Ridge" apparently refers to an occurrence at which federal officers shot and killed a mother and child. Appellant had watched a two-part, made-for-television movie about the incident on the two nights directly preceding her attempted arrest.

3. The State argues that the comment by the judge was not made in the presence of the jury, and thus it could not have denied Appellant of a fair and impartial trial. Its brief states, "Counsel for [State] was present at trial ... and states as an officer of the Court that the all [sic] substantive objections were made at the bar and thus outside the hearing of the jury." This Court notes that these statements in its brief are not

self-proving. From the record, it appears that the comment by the judge was made in the presence of the jury. The record reveals at least 22 times where the court reporter states: "At this time counsel approached the bench, and the following proceedings were had.... Proceedings returned to open court." At the time the judge's comment was made in this particular instance, however, no such remarks were recorded. As such, this Court assumes, at least for purposes of this appeal, that the comment in question was made in the presence of the jury.

4. Missouri Rules of Criminal Procedure (1998).

A trial judge is to maintain absolute impartiality during proceedings to ensure that the defendant receives a fair trial. *State v. Jones*, 921 S.W.2d 28, 32 (Mo.App. W.D.1996). Accordingly, the court must maintain a position of neutrality and should avoid any conduct which might be construed as indicating a belief on the part of the judge as to the defendant's guilt. *State v. Sykes*, 628 S.W.2d 653, 655 (Mo.1982). The issue is whether the remarks by the trial judge could have prejudiced the minds of the jury against the defendant. *Sykes*, 628 S.W.2d at 655–56. Whether there was prejudice depends on the context and words in each case. *Jackson*, 836 S.W.2d at 6. There is no error as long as the trial judge does not express an opinion as to the nature, content, or truthfulness of evidence. *Id.* at 7.

In *State v. Moseley*, 705 S.W.2d 613 (Mo. App. E.D.1986), the prosecution objected to the testimony of a defense witness on the ground that the witness had no basis to form an opinion as to the defendant's reputation. The judge questioned the witness and sustained the objection. On redirect examination, however, the defense counsel again sought to elicit testimony from the witness regarding the defendant's reputation. The judge again questioned the witness, but this time, he admitted the testimony stating, "I'll leave it in for whatever it's worth." There, the court stated that the judge's comment fell short of violating the standard of fairness and impartiality required of the trial court. *Id.* at 616.

In *State v. Wren*, 486 S.W.2d 447 (Mo. 1972), the following exchange occurred:

[Defense Counsel]: What do you [police officers] ask them [suspects] when you stop [chasing them]?

[The Court]: You will have to develop that it serves some useful purpose. I can't see any useful purpose in this line of inquiry.

[Defense Counsel]: Your Honor, it will become relevant, because the defendant was afraid.

[Prosecutor]: I object to the question on the grounds of immateriality, Your Honor.

[The Court]: I think the objection is well justified, but I will overrule you and allow you to develop this *ad nauseum*. Go ahead and proceed. Ask your questions.

The Missouri Supreme Court held that the trial court's conduct degraded the defense counsel as a person and detracted from the evidence's worth in the eyes of the jury. The Court stated that "[t]he defense being offered was tenuous at best; but, if admissible at all, defendant was entitled to have it presented to the jury free of the stamp of disapproval placed there by the trial court." *Id.* at 449.

The comment in the instant case falls short of that in *Wren*. The comment did not indicate the court's belief with regard to the guilt of Appellant, and it was not degrading to the defense. It does not appear to have been so prejudicial to Appellant that it impacted so substantially upon her rights that manifest injustice or a miscarriage of justice would result if left uncorrected. No plain error being demonstrated, Appellant's first point is denied.

For her next point on appeal, Appellant contends that the trial court erred in overruling her motion for a mistrial when Sergeant Parks violated a motion in limine by referring to a man named Robert Joos in his testimony. From the record, it appears that Mr. Joos was well-known to area law enforcement officials in that they had been to his property on several occasions. Furthermore, Mr. Joos had recently been involved as the defendant in a highly publicized trial, and a local television station had done a story on Annie Ames and Robert Joos. Appellant argues that she had a right not to be convicted based on her association with others, and that the trial court had previously granted Appellant's motion in limine to exclude any reference to Robert Joos and Appellant's association with him.

On the day of trial, counsel for Appellant filed a motion in limine to exclude any mention of Robert Joos. The trial court agreed that no reference should be made to him during trial except that the court would ask during voir dire whether any of the jurors had heard of him. If any had heard of him,

they were to be individually questioned outside the presence of the other jurors. Furthermore, the Prosecutor was to tell her witnesses not to make any mention of Robert Joos.

During voir dire, the trial court asked the jurors if any of them knew Robert Joos. Five jurors had heard of him, but none of these jurors served on the twelve-member jury at Appellant's trial.

During trial the following occurred:

[Sergeant Parks]: We went to Annie Ames' residence.

[Prosecutor]: And where is that located?

  \*   \*   \*

Okay. And how did you get there?

[Sergeant Parks]: I think we went out down double—or K through Huckleberry Ridge Forest and back up a gravel road through four or five miles of gravel road to the Robert Joos property.

[Prosecutor]: Okay. When you arrived at the property, how do [sic] you get to the house?

[Sergeant Parks]: You travel down a gravel lane. It's a mile off the county road.

[Defense Counsel]: Judge, can we approach? ... I think we had a motion in limine and they instructed the Prosecutor to instruct his witnesses not to make any reference to Robert Joos. The first opportunity this officer had is to get this surname in [sic]. I think it's malicious. It's done purposely to pressure the jury to get this client convicted because of the association with Mr. Joos. There was no—It wasn't necessary for him to make that comment. And I think this officer, he's—He knows better. He has been a law enforcement officer 25(sic) years. This is not the first time he's testified.... But I'm saying I'm just going to ask for a mistrial because we explicitly said not to make any reference to Robert Joos during the course of this trial. It has nothing to do with this trial today....

[Prosecutor]: This may be my fault. And I told [Sergeant Parks] not to mention not [sic] their past experience with Robert Joos and how they get [sic] to know him.

[Court]: Well, ... I think it is a violation of the order in limine, but I'm not going to grant the motion for mistrial.

[Defense Counsel]: Okay. Judge—

[Prosecutor]: Okay. Would you like me to pull my officer aside and further caution him?

[Court]: Yeah. That might be a good plan.

  \*   \*   \*

I'm willing to strike it for the record, but I want you to think about it before I do it.

[Defense Counsel]: Yeah. I don't want you—Yeah. Okay.

  \*   \*   \*

(Proceedings returned to open court.)

[Prosecution]: So actually, you crossed the gate, something along those lines?

[Sergeant Parks]: Yes. We—We got to the—the driveway of the Joos property—or the—the property where Annie Ames was living, and proceeded down that lane, went two-tenths of a mile until we came to a metal gate that was across the roadway.[5]

■■ The declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Schneider,* 736 S.W.2d 392, 400 (Mo. banc 1987). The decision whether to declare a mistrial rests largely within the discretion of the trial court because the trial court has observed the incident that precipitated the request for a mistrial and is in a better position than is the appellate court to determine what prejudicial effect, if any, the incident had on the jury. *Id.* at 401.

■■ Testimony contrary to the court's ruling on a defendant's motion in limine does not, in itself, require the declaration of a mistrial.[6] *State v. Mack,* 793 S.W.2d 362, 364

---

5. Defense counsel did not specifically object to this second reference to Robert Joos.

6. In fact, it has been held by this Court that: "A motion in limine is interlocutory in nature. A

(Mo.App. W.D.1990). While a mistrial is an appropriate remedy for violations of pretrial orders under some circumstances, the remedy is a drastic one, and we will not reverse a trial court's exercise of discretion absent a showing of clear abuse and substantial prejudice resulting to the defendant. *State v. Williams*, 700 S.W.2d 541, 543 (Mo.App. S.D. 1985).

In this case, we do not find an abuse of trial court discretion in its failure to declare a mistrial upon the request of Appellant or *sua sponte*. The reference to Mr. Joos was brief, and it appears that the prosecution did not intentionally attempt to elicit it. Furthermore, it is highly unlikely that a brief mention of Mr. Joos would prejudice Appellant in any way because none of the jurors who served on the panel had heard of him prior to trial. As mentioned earlier, the venirepersons in the original jury pool who had heard of Mr. Joos were questioned with regard to their knowledge of him out of the presence of the others. *See Mack*, 793 S.W.2d 362. In addition, no other relief or corrective action was requested by Appellant, a fact that "dulls any inclination" to hold that the trial court abused its discretion in not declaring a mistrial. *State v. Smith*, 934 S.W.2d 318, 321 (Mo.App. W.D.1996). The trial court did not abuse its discretion in failing to grant a mistrial under these circumstances. Appellant's point is denied.

■ Appellant next contends that the trial court erred in admitting, over her objection, State's Exhibit 2, the videotape of Appellant's interview with the local television station given on the day of the incident. Appellant argues that one reason the tape should not have been admitted is because it contained hearsay statements.

Appellant only points to one instance of alleged hearsay. She argues that the tape contained inadmissible hearsay because the reporter stated during the interview, "The McDonald County Sheriff says they have a valid warrant for [Appellant's] arrest because she didn't show up in court on a traffic violation." Appellant contends that the admission of the videotape violated her right to confront witnesses against her because it referred to a statement made by the Sheriff regarding her case, yet the Sheriff was not available at trial for cross-examination.

■ Out of court statements that are offered for the truth of the matter asserted are generally inadmissible. *State v. Shurn*, 866 S.W.2d 447, 457–58 (Mo. banc 1993). The statement on the videotape did not constitute hearsay, however, because the statement allegedly made by the Sheriff was not offered for the truth of the matter asserted; rather, it was made part of the videotape simply to supply the context for the statements made by Appellant. The statement was otherwise irrelevant to the case at hand.[7] *See State v. Molasky*, 655 S.W.2d 663, 668 (Mo.App. E.D.1983) (where a videotape was deemed admissible because a comment by a third-party witness was not offered for the truth of the matter asserted, but to supply the context for admissions made by the appellant on the videotape.)

■ Appellant also contends that the videotape should not have been admitted because it was done so in violation of the best evidence rule. She argues that it was merely a copy of the original tape, some of the material on the original had been edited out, and there was no showing that the videotape accurately reflected the original tape.[8] The record reveals, however, that Appellant did not object on the ground that Exhibit 2 violated the best evidence rule. Instead, she objected as follows:

---

pretrial ruling on a motion in limine is not binding upon a trial court during the course of a trial.... A motion in limine, in and of itself, preserves nothing for appeal." *State v. West*, 825 S.W.2d 402, 406 (Mo.App. S.D.1992).

**7.** It is no defense to a charge of resisting arrest that there existed no valid basis with which to arrest the purported violator. *State v. Merritt*, 805 S.W.2d 337, 339 (Mo.App. E.D.1991).

**8.** The best evidence rule applies to sound recordings, as well as writings and photographs. *State v. Strothers*, 798 S.W.2d 723, 724 (Mo.App. S.D. 1990). Secondary evidence may be admitted in lieu of the original if the original is unavailable provided that the original has not been destroyed, lost, or become unavailable through the fault of the proponent and the secondary evidence does not appear to be untrustworthy. *Id.*

I guess [the reporter] stated that actually the tape is edited. And that's—I guess one of the bigger problems is how long was [the reporter] out [at the property] for? ... It's what context was edited out to make it look like the tape is—I mean, maybe the [Appellant] told her a totally different story in the beginning and that part was edited because it wasn't useful that day. ... *I think she is entitled, if the tape is going to be introduced, to see the whole tape so the jury can see the whole interview rather than just a portion of it.* (Emphasis ours).

■ A party on appeal is held to the specific objections presented to the trial court. *State v. Thomas,* 969 S.W.2d 354, 355 (Mo.App. W.D.1998). The grounds asserted on appeal are limited to those stated at trial. *State v. Johnson,* 483 S.W.2d 65, 68 (Mo. 1972); *State v. Phillips,* 939 S.W.2d 502, 505 (Mo.App. W.D.1997). A litigant is not permitted to broaden the objection he or she presented to the trial court; he or she cannot rely on a theory different from the one offered at trial. *Phillips,* 939 S.W.2d at 505. We, therefore, limit our review accordingly.

■ In her brief, Appellant argues that "a tape which has been edited in some unknown manner to shorten it, with no evidence as to whether the edits came at the beginning, middle, end, or some combination thereof, of the tape, has not been shown to be trustworthy.... [T]he evidence ... establishes that [the videotape] is incomplete and therefore did not accurately portray the contents of the original tape" and "the jurors should be able to see the entire interview rather than just a portion of it."

In *State v. Engleman,* 634 S.W.2d 466 (Mo.1982), the Missouri Supreme Court examined a similar issue. In that case, the State introduced only parts of recorded conversations involving the defendant. The defendant objected on the ground that the State was introducing only parts of the conversations rather than in their entirety, and requested that the entire series of recordings be admitted. He did not, however, offer other parts of the conversations for purposes of cross-examination nor as part of his defense in order to explain, contradict, or qualify the parts used by the State. The Court held that no error was committed in denying the defendant's broad request for the entire series to be played to the jury because he failed to show that the deleted portions of the recorded conversations were relevant to any material fact or that they tended to explain, contradict, or qualify the excerpts that were placed in evidence by the State and played to the jury. *Id.* at 480.

In this case, Appellant was a party to the recorded interview and thus undoubtedly aware of the edited contents from the tape. Nevertheless, she has failed to demonstrate that the deleted portions of the interview were relevant to any material fact or that they tended to explain, contradict, or qualify the excerpts that were placed in evidence by the State and played to the jury. Accordingly, Appellant's argument is without merit. The trial court did not err in admitting the videotape into evidence. Appellant's point is denied.

■ In her final point, Appellant contends that the trial court erred in overruling her motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to support a finding of guilty due to the fact that the law enforcement officers were not contemplating an actual arrest at the time Appellant allegedly resisted the arrest.

■ In determining the sufficiency of the evidence, this Court accepts as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the State that can be reasonably withdrawn therefrom, and disregards all contrary evidence and inferences. *See State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc 1997); *State v. Norton,* 949 S.W.2d 211, 213 (Mo.App. S.D. 1997). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that Appellant was guilty. *Norton,* 949 S.W.2d at 213.

■ A person commits the crime of resisting arrest if he or she, knowing that a law enforcement officer is making an arrest and for the purpose of preventing that officer

from effectuating such arrest, resists the arrest by using or threatening the use of violence or physical force. MO.REV.STAT. § 575.150 (1994). The statute requires first that a person know that a law enforcement officer is making an arrest, and second that the person resist that arrest by using or threatening the use of violence. *See State v. Dossett,* 851 S.W.2d 750, 751 (Mo.App. W.D. 1993).

At trial, there was evidence introduced that Sergeant Parks and three other officers "made plans to execute this failure to appear warrant"; that subsequently these officers went to the residence of Appellant "to arrest her"; that Appellant appeared in the window yelling and displaying a weapon; that Appellant displayed the weapon out the window for approximately thirty seconds; that although Appellant never aimed the weapon at any particular officer, she threatened to use it if the officers came any closer; that during this time, Sergeant Parks informed her that they had a warrant for her arrest for failing to appear in court; that Appellant must have known who the officers were, because she addressed one of the officers by name, and at least three of them were in uniform; and that Appellant stated that she was not going to jail with the officers because the officers could not arrest her without a search warrant.

This evidence, if accepted as true, tends to prove Appellant's guilt such that rational jurors could find beyond a reasonable doubt that Appellant knew that law enforcement officers were attempting to arrest her, and that Appellant thereby resisted the arrest by threatening the use of violence with a weapon. Accordingly, sufficient evidence existed to support a finding of guilty, and thus the trial court did not err in overruling Appellant's motion for judgment of acquittal at the close of all the evidence. Appellant's final point is denied.

Judgment is affirmed.